# ED GILMORE, Appellant, v. WESTERN ELECTRIC COMPANY, a Corporation, Respondent.

### (172 N. W. 111.)

**Damages — settlement for injuries — repudiation of settlement — necessity of returning benefits.**

1. A person who desires to rescind a contract of settlement made for personal injuries upon the ground of misrepresentation, fraud, or mistake, must, upon discovery thereof, announce his decision to repudiate the settlement so made; and if thereafter he continues to treat and use the property received as his own, knowing well the facts, he is bound by the contract made, pursuant to § 5936, Compiled Laws 1913.

**Damages — personal injuries — settlement for injuries — rescission ineffectual without repayment of benefits.**

2. In an action for personal injuries where the plaintiff, some sixteen months prior to the institution of the action, executed a full release for the damages suffered, and thereafter having knowledge of his true condition, and of the facts upon which he claims the right to rescind the settlement, retains the settlement money then possessed by him amounting to some $700, and thereafter expends the same and within a period of fourteen months makes no complaint, offer to restore, or restoration of the settlement money received, or any part thereof, it is *held* as a matter of law that no right to rescind exists.

**Damages — personal injuries — courts will look closely for fraud in such settlements.**

3. In such action it is the duty of the court to scrutinize the settlement made for personal injuries sustained, realizing the opportunities to practise deception and fraud upon persons while in a condition of physical and mental disability, and it is sufficient under such circumstances if the evidence presented. discloses a fair and clear question of facts concerning fraud or misrepresentation practised.

Opinion filed April 15, 1919.

---

NOTE.—According to a large number of cases it is unnecessary to return or tender the consideration for a release obtained by fraud as a prerequisite for the maintenance of a suit for damages resulting from an injury; however, a considerable number of cases hold that a party who repudiates a settlement for personal injuries because of fraud and sues upon the original cause of action must first return or tender the consideration received, as will be seen by an examination of the cases collated in notes in 35 L.R.A. (N. S.) 660, and L.R.A.1918F, 1073, on return or tender of consideration for release of claim for personal injuries set aside on the ground of fraud.

Action for personal injuries in District Court, Stutsman County, *Coffey,* J.

From a judgment, upon a directed verdict, for the defendant, plaintiff appeals.

Affirmed.

*John P. DeVaney, Geo. W. Thorp,* and *Russell D. Chase,* for appellant.

"The defendant was negligent in not furnishing gloves for plaintiff's protection." 3 Labatt, Mast. & S. § 949, and numerous cases cited, and annotations under note 2; see also § 939; 18 R. C. L. § 92, p. 589; 26 Cyc. pp. 1433, 1441, and citations. Snyder v. Mutual Teleph. Co. (Iowa) 112 N. W. 776; Traut v. Light Co. (Mo.) 132 S. W. 58.

"It is actionable negligence on the part of a master to fail to furnish his servant with such tools and appliances as may be required for the reasonably safe prosecution of his work." 26 Cyc. 1097, 1106, and cases cited; Lang v. Baylies, 19 N. D. 582; Herbert v. N. P. R. Co. 3 Dak. 38; N. P. R. Co. v. Herbert, 116 U. S. 642; Gates v. Co. (S. D.) 50 N. W. 907; Cameron v. R. Co. 8 N. D. 124; Bennett v. R. Co. 2 N. D. 112; Boss v. Co. 2 N. D. 128; Umsted v. Elevator Co. 18 N. D. 309; Mehan v. Co. 13 N. D. 432; Wyldes v. Patterson, 31 N. D. 282; Gerke v. Zimmerman (S. D.) 154 N. W. 812; Wyldes v. Patterson, 153 N. W. 630.

"When a master employs electricity in his business he must exercise every reasonable precaution known to protect his servants from injury." 26 Cyc. 1120; Mobile Electric Co. v. Sanges, 23 Ann. Cas. 461, note; Essex County Electric Co. v. Kelley (N. J.) 37 Atl. 619; Riker v. R. R. 72 N. Y. Supp. 168; Holden v. Teleph. Co. (Minn.) 122 N. W. 1018; Kelley v. Teleph. Co. (Minn.) 25 N. W. 76, and note; Clark v. Teleph. Co. (Iowa) 123 N. W. 327; Co. v. Tweed, 138 S. W. 1155; Indianapolis Teleph. Co. v. Sproul (Ind.) 93 N. E. 463; Pence v. Co. 155 Ill. App. 480; Will v. Teleph. Co. (N.H.) 30 L.R.A. (N.S.) 477.

"The master also owes the duty of inspecting all of the safety appliances and protecting his servants against injury." Cameron v. R. Co. 8 N. D. 124; Mehan v. Co. 13 N. D. 432; Bennett v. R. Co. 2 N. D. 112; Lang v. Baylies, 19 N. D. 582; Boss v. Co. 2 N. D. 128; Raymond v. Electric Light Co. (Idaho) 170 Pac. 88; Sanitonio Edi-

son Co. v. Dickson (Tex.) 42 S. W. 1009; DuPree v. Alexander (Tex.) 68 S. W. 739; Clairain v. Co. (La.) 3 So. 625; Berley v. Teleg. Co. (S. C.) 64 S. E. 157; cases cited in note on page 776 of 21 L.R.A. (N.S.).

"The servant can recover unless his obedience to the order involved such obvious danger that no man of ordinary prudence would have obeyed it." Umstad v. Elevator Co. 18 N. D. 309; Webb v. Dinney Bros. 22 N. D. 377; Swanson v. Co. 135 N. W. 207; Wyldes v. Patterson, 31 N. D. 282; Warehein v. Huseby, 165 N. W. 502; Raymond v. Co. (Idaho) 170 Pac. 88.

"It would be absurd to contend that when the work is done under directions of a master the time when the same can be safely continued is matter for the individual opinion of each of the employees interested." Oakland v. Nelson (N.D.) 149 N. W. 337; 18 R. C. L. pp. 655 to 659; Lang v. Baylies, 19 N. D. 582; Allison v. Stivers (Kan.) 106 Pac. 996.

*DeNegre, McDermott, & Stearns,* and *Knauf & Knauf,* for respondent.

"When the master has furnished his servant a reasonably safe place to work, he is not liable when the servant is injured by doing the work in an unsafe manner." Livengood v. Joplin, 77 S. W. 1077; Hayden v. Manufacturing Co. 29 Conn. 548; Dixon v. Teleg. Co. 68 Fed. 630; Greene v. Teleg. Co. 72 Fed. 250; Flood v. Teleg. Co. 131 N. Y. 603, 30 N. E. 196; Teleph. Co. v. Loomis, 87 Tenn. 504, 11 S. W. 356.

The plaintiff assumed the risks because they were obvious and well known to him, or might readily have been seen by him. Thompson v. R. Co. 3 Am. Neg. Rep. 53; Chandler v. A. C. E. R. Co. 4 Am. Neg. Rep. 189; 14 Am. & Eng. Enc. Law. 845; Bailey, Master's Liability for Injury to Servant, p. 145, and cases cited; Foley v. Light Co. 54 N. J. L. 411, 24 Atl. 487; Hayball v. Railway Co. (Mich.) 72 N. W. 145, citing Beach, Contrib. Neg. § 370; Kean v. Rolling Mills, 66 Mich. 277, 33 N. W. 395; R. Co. v. Frawley (Ind.) 9 N. E. 594, citing Engine Co. v. Randall, 100 Ind. 293; R. Co. v. Adams, 105 Ind. 151, 5 N. E. 187; see also Kean v. Rolling Mills, 66 Mich. 277, 33 N. W. 395, citing Davis v. R. Co. 20 Mich, 105; R. Co. v. Dolan, 32 Mich. 510; Cooley, Torts, 542.

BRONSON, J. This is an action for personal injuries. On April 20, 1915, the plaintiff was working as a lineman for the defendant at Jamestown upon an electric pole carrying high-tension wires, making repairs thereto; while so employed, he came in contact with the electric current and received a shock occasioning severe burns and injuries to his hands. On the date of the injuries the index finger of his right hand was amputated. Thereafter, at Jamestown, he received medical treatment daily for his injuries until June 24, 1915. During this time his hands were in bandages, being dressed almost daily; with the flesh, particularly on his fingers, burned and raw, and with some of the fingers badly cramped. About two weeks prior to June 25, 1915, he told the manager of the defendant company that he needed money; the manager said he would write to Minneapolis to see about a settlement. Prior to that time a claim agent representing a liability company came to Jamestown, saw the plaintiff, and received from him a statement concerning the injuries. About June 23d thereafter, the claim agent came to Jamestown and for two days conducted negotiations with the plaintiff with a view to making a settlement for his injuries. These negotiations concerned principally the amount of the settlement. The plaintiff was offered, first, $700, then $1,000, and finally $1,200, at which figure settlement was made. The plaintiff signed and executed an acknowledgment for a full release therefor. He read and understood the same. He went over to the bank and received $1,200 in cash. Almost immediately thereafter the plaintiff went to Minneapolis; before leaving he paid the doctors $150 and some other bills at Jamestown. His hands were then in a bad condition; bandaged, flesh raw, and fingers constricted. At Minneapolis he continued to receive there medical treatment, and, finally, in August, 1915, three more fingers, the second and third finger on the left hand, and the second finger on the right hand, were amputated. In September, 1915, he had then about $700 of the settlement money; in December, 1915, about $400, and the last of it, he spent in April, 1916. He made no complaint to anyone about the settlement except to his attorneys, and the defendant did not know about any complaint that he had concerning the settlement until he started suit, in October, 1916. To the complaint of the plaintiff alleging negligence, the defendant

42 N. D.—14.

interposed an answer alleging, in addition to contributory negligence and assumption of risk, the release made, as a bar to the action.

In the trial court the verdict was directed for the defendant; from the judgment rendered thereupon the plaintiff has appealed. The appellant specifies error of the trial court in directing a verdict, upon the ground that the evidence presented a question of fact for the jury upon mistake of fact and in law, of fraud and deceit, of undue influence and fraudulent representations, in the procurement of the release.

In view of our consideration and determination of these specifications, it will be unnecessary to consider other specifications urged.

The appellant testified and claims that at the time of the settlement he had not consulted with any lawyers; that he was advised by the claim agent that he could go to work about August 15, 1915; that the claim agent said that the doctor had told him that his fingers would be all right and that he could go to work at that time; that the manager of the defendant advised him to settle; that it would be better for him to settle because the insurance company would beat him in court; that he had no case; that he also told him that his fingers would come back and that he could use pliers as well as ever; that the claim agent told him that he had talked to his lawyers and that if he went to law he would not get anything, because it was a mere accident and he had no case; and, further, that they would carry the case to the Supreme Court of the United States, and would spend $20,000 before they would give him $1, in order to beat him; that the plaintiff was scared; that he relied on these statements and so made the settlement; that he first found out that his fingers would have to be amputated when he went to Minneapolis; that after his three fingers were amputated in Minneapolis, he then discovered that he was mistaken as to the extent of his injuries; that then he did not have the money to go back; that he spent the money received in living expenses. The evidence discloses that the plaintiff was working for the Northern State Power Company at Minneapolis, at a wage of $65 per month since November 6, 1916 (trial had June 25, 1917), and was also conducting a small confectionary store. The plaintiff did not restore nor offer to restore the consideration paid in the settlement, or any part of the same. Under the evidence, in the month of August, 1915, at least in September, 1915, he knew his con-

dition and knew then the truth or falsity of the alleged statements made to him to induce settlement; he then had about $700 of the settlement money; then or thereafter, knowing the facts, he neither complained to the defendant, offered to restore, or even sought to restore, any of the money he then had.

In settlements of this character it is the plain duty of the court to scrutinize the same carefully, as manifestly there are great opportunities to pratise deception and fraud upon poor unfortunates, who then in a condition of physical disability, and mentally depressed over their misfortunes, and anxiety for their future, perhaps then in dire need of financial assistance, may not know or appreciate the real extent of their injuries, or the proper compensation that they ought to receive therefor. Primarily, for these reasons, chap. 175, Sess. Laws 1917, was enacted so as to relieve acts of undue influence or deception that might be practised by claim agents or others who may be overanxious to compromise claims of those who have been injured. It provides and discloses a legislative policy to hold voidable such settlements made while the person injured is under disability, or if made within thirty days of the date of the injury, and it permits such person, within six months after the date of such injury, to avoid such settlement without returning the consideration paid, and by further providing that the amount paid shall not be a bar to the prosecution of the action but may be offset against the amount of damages recoverable. Even though this act were in force at the time of the injuries received the plaintiff would not have come within its terms.

This court might be inclined to consider that a question of fact was presented upon the record within the specifications charged by the appellant, and that the action, therefore, should have been submitted to a jury, if the record did not disclose affirmatively that the plaintiff, knowing his condition and the falsity of the facts upon which he relies to rescind, retained the balance of the consideration then possessed by him, and failed in any manner to restore or offer to restore to the defendant such money then possessed by him. Though the consideration paid be deemed not compensatory, nevertheless it was substantial even when the appellant became aware of his true condition.

The defendant has cited and relied upon Pope v. Bailey-Marsh Co. 29 N. D. 355, 151 N. W. 18, 8 N. C. C. A. 516. The writer of this

opinion does not agree with the conclusion of this court in that case upon the record, or upon the principle of law announced, which requires a proof of such fraud and misrepresentation in executing settlement of personal injuries of such a character as to leave in the mind of the chancellor no hesitation or substantial doubt. In cases of this character it should be sufficient if the record discloses fairly and clearly a question of fact concerning fraud and misrepresentation that should be submitted to the jury. For in such cases, the jury is the judge of the facts, and not the chancellor.

Accordingly, this court is not disposed to determine such matters as a question of law where the trial court has found that there is a question upon the record properly and fairly to be submitted to a jury. The trial court in an extensive memorandum opinion, well stated, has found and determined that the appellant, as a matter of law, was not entitled to rescind this settlement. He heard all of the evidence of the case and is in a better position to judge of the same than this court, unless, upon the cold facts of the record, we are clearly of the opinion that he erred. We are unable to so find upon a careful investigation of the entire record. This case is governed by the principles of law stated in Swan v. Great Northern R. Co. ante, 40 N. D. 258, L.R.A.1918F, 1063, 168 N. W. 667, wherein particularly the principle is recognized and stated that a party who desires to rescind such contract upon the ground of misrepresentation or fraud must, upon discovery thereof, announce his decision to repudiate the settlement, and, if then he continues to treat the property received as his own, knowing well the facts, he is bound by his action and the provision of the statute concerning rescission. Comp. Laws 1913, § 5936. The judgment of the District Court is affirmed, with costs to the respondent.