KELLEY *v.* JUDGE OF RECORDER'S COURT OF DETROIT.

1. EVIDENCE—JUDICIAL NOTICE—"AMBULANCE-CHASER" HAS RECOGNIZED MEANING.

   The courts may take judicial notice that the term "ambulance-chaser" is a recognized colloquial word of English vocabulary, and although originally applied to the unseemly activities of overzealous undertakers, is now applied either to a lawyer or the agent of a lawyer, who follows up cases of accident in the streets and tries to induce the injured person to bring suit for damages.

[1]Ambulance Chaser, 2 C. J. p. 1316 (Anno); Evidence, 23 C. J. § 1810.

2. STATUTES—CONSTRUCTION—PROVISOS.

In construing a statute, provisos following an enacting clause are to be given a rational construction in harmony with the ascertainable general purpose and intent of the enactment, considered in its entirety, aided, when possible, by any other legislation found *in pari materia*.

3. CHAMPERTY AND MAINTENANCE—STATUTE FORBIDDING SOLICITING PERSONAL INJURY CASES CONSTRUED.

The proviso in section 1, Act No. 280, Pub. Acts 1925, validating contracts for personal injury cases entered into with attorneys, must be construed as referring to unsolicited contracts, which are validated by 3 Comp. Laws 1915, § 12079, and, therefore, said act is not open to the objection that it first makes the bare solicitation of personal injury contracts, whether obtained or not, an offense, and contracts so secured void and then validates such contracts when entered into with attorneys, whether solicited or not.

4. SAME—CONSTITUTIONAL LAW — CLASS LEGISLATION — ATTORNEY AND CLIENT.

Act No. 280, Pub. Acts 1925, forbidding the soliciting of personal injury cases, is not open to the objection that it is class legislation, since it applies to "any person;" and that certain persons may be prone to do the forbidden thing, while others are not, does not make it class legislation.

5. SAME—UNREASONABLE DISTINCTION.

Nor is said act unconstitutional in that it makes an unreasonable distinction between personal injury claims and other kinds of claims, since there is a reasonable basis of distinction between them, in that market value for personal injuries is unknown, and the measure of damages and rules of proof are distinctly different in injury to property and personal injury cases.

6. CONSTITUTIONAL LAW—RULE OF CLASSIFICATION.

The fundamental rule of classification is that it shall not be arbitrary, must be based on substantial distinctions, and be germane to the purpose of the law.

²Statutes, 36 Cyc. pp. 1147, 1162; ³Champerty and Maintenance, 11 C. J. § 44a (Anno); ⁴Id., 11 C. J. § 44a (Anno); ⁵Id., 11 C. J. § 44a (Anno); ⁶Constitutional Law, 12 C. J. § 855.

7. SAME — RIGHT TO MAKE AND ENFORCE CONTRACTS — POLICE POWER.

> The right to labor in the employment of others is a property right within the meaning of the Constitution entitling one to sell his services in any lawful business, including the right to make and enforce contracts, of which he may not be arbitrarily deprived by legislation except in the proper exercise of police power.

8. CHAMPERTY AND MAINTENANCE—REGULATORY STATUTE.

> Act No. 280, Pub. Acts 1925, forbidding the soliciting of personal injury claims, is not open to the objection that it deprives one of the right to engage in the business of collecting claims and prohibits him from making unsolicited contracts with any person injured as the result of an accident, since it is but a regulatory law, forbidding him from running after and soliciting claims of injured persons.

9. CONSTITUTIONAL LAW—ALL RIGHTS SUBJECT TO POLICE POWER.

> The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order, and morals of the community.

10. SAME—PRESUMPTION IS THAT ACT IS CONSTITUTIONAL.

> Since all presumptions are that a statute was regularly enacted in full compliance with all provisions for its adoption and is in conformity with all constitutional requirements, to hold it void the repugnancy must clearly appear, and in case of doubt the courts will not interfere.

11. SAME—REGULATION OF OCCUPATIONS VALID IF WITHIN POLICE POWER.

> Regulation of lawful trades, occupations, and business activities is within the exercise of the police power by the legislature, and unless an act of the legislature is affirmatively shown so unreasonable, oppressive, extravagant, and arbitrary as to needlessly invade property or personal rights as protected by the Constitution, it must be held valid.

12. SAME—STATUTES—CLASSIFICATION—VALIDITY.

> A statute does not violate the equal protection clause merely because it is not all-embracing and does not cover

[7]Constitutional Law, 12 C. J. §§ 431, 460; [8]Champerty and Maintenance, 11 C. J. § 44a (Anno); [9]Constitutional Law, 12 C. J. § 442; [10]Id., 12 C. J. §§ 221, 222, 443; [11]Id., 12 C. J. §§ 431, 443; [12]Id., 12 C. J. § 878.

the whole field of possible abuses, and because other instances may be suggested to which it might have been applied, and it is not open to objection unless the classification is so lacking in any adequate or reasonable basis as to preclude the assumption that it was made in the exercise of legislative judgment and discretion.

13. CHAMPERTY AND MAINTENANCE—SOLICITING PERSONAL INJURY CASES—ATTORNEY AND CLIENT.

Act No. 280, Pub. Acts 1925, forbidding the soliciting of personal injury cases, is a proper police regulation within legislative power, and, therefore, is constitutional.

Mandamus by Joseph A. Kelley to compel John A. Boyne, judge of the recorder's court of Detroit, to sign a warrant for the violation of Act No. 280, Pub. Acts 1925.  Submitted March 15, 1927.  (Calendar No. 32,521.)  Writ granted June 6, 1927.  Rehearing denied October 3, 1927.

*William W. Potter*, Attorney General, *Robert M. Toms*, Prosecuting Attorney, and *Valois E. Crossley*, Assistant Prosecuting Attorney, for plaintiff.

*M. F. McDonald* (*Arthur Jones*, of counsel), for defendant.

STEERE, J.  Petition for mandamus herein shows that on February 17, 1926, the prosecuting attorney of Wayne county made written recommendation to the recorder's court of the city of Detroit for issuance of a warrant to arrest one John T. McNamara for having solicited plaintiff, who had been injured in an automobile accident, to employ him in making a claim for damages, in violation of Act No. 280, Pub. Acts 1925, entitled:

"An act to prohibit the soliciting of personal injury claims and making illegal the solicitation thereof and providing a penalty for the violation of this act."

Plaintiff thereupon presented to Judge Boyne of said court, defendant herein, then sitting as magistrate, a

---

[13]Champerty and Maintenance, 11 C. J. § 44a (Anno).

complaint in writing properly charging McNamara with violation of said act on February 16, 1926, to the truth of which he was duly sworn by defendant. He then tendered a warrant prepared pursuant to the allegations of said complaint for the arrest of McNamara, requesting defendant to sign and issue the same in his official capacity. This he refused to do, on the ground that said act was unconstitutional. It reads as follows:

"SECTION 1. It shall be unlawful for any person, firm, copartnership, association or corporation or for the officers, agents, servants, or employees of any such person, firm, copartnership, association or corporation, directly or indirectly, individually or by agent, servant or employee, to solicit, any person injured as result of an accident, his administrator, executor, heirs or assigns, for the purpose of representing such person in making claim for damages or prosecuting any action or causes of action arising out of any personal injury claim against any other person, firm or corporation, and any contract entered into as a result of such solicitation shall be void: *Provided, however,* That nothing herein shall affect a contract entered into by any person, firm or corporation with an attorney duly admitted to practice law in this State.

"SEC. 2. Any person violating any of the provisions of this act shall be deemed to be guilty of a misdemeanor and upon conviction by a court of competent jurisdiction shall be liable to a fine not exceeding five hundred dollars or imprisonment in the county jail not exceeding ninety days, or both such fine and imprisonment in the discretion of the court."

Application of plaintiff was thereafter presented to this court by the prosecuting attorney of Wayne county for a writ of mandamus requiring defendant to issue the warrant applied for. Order to show cause was granted. Return was made by defendant admitting the allegations in said petition, stating as reasons for such refusal that the act is unconstitutional because not a valid exercise of the police power, has no re-

lation to public health, safety, morals or welfare, is unjustifiable class legislation discriminating between persons soliciting claims for personal injuries and persons soliciting claims for injuries to property, although both might arise out of the same transaction; invalidates contracts secured through solicitation by others than attorneys, but does not declare invalid contracts solicited by the latter, although it makes solicitation by either criminal, it prohibits solicitation regardless of whether or not the contracts sought to be secured are equitable and advantageous to the injured person, and denies persons similarly situated equal protection under the law.

It is conceded in the briefs of both parties that as a general proposition legitimate exercise of police power by a State is not affected by the Fourteenth Amendment of the Constitution of the United States. The issue is whether this act is a proper exercise of the police power.

Defendant's counsel urge against its validity that the right of the individual to make a business contract for his services in collecting a lawful claim is a liberty protected by the Fourteenth Amendment, with which a State in the exercise of its police powers has no right to interfere except in those cases where the safety, health, morals or general welfare of the public demands it, and the act does not point to or purport to be in the interest of any of those essentials; that the act is discriminatory class legislation without logical or legal basis, as no reasonable distinction can be found between persons engaged in collecting tort claims for personal injuries and for injuries to personal property, both of which may and often do result from the same tortious act, while the constitutional guaranty of equal protection under the law forbids placing greater restrictions or heavier burdens upon some than upon others of the same class, pursuit, or condition; citing

239—Mich.—14.

*Haynes* v. *Lapeer Circuit Judge*, 201 Mich. 138 (L. R. A. 1918D, 233).

The brief of the prosecuting attorney, after stating familiar rules to the effect that all presumptions are in favor of the validity of an act, courts have consistently declined to set any fixed limitation upon subjects calling for exercise of the police power, etc., is largely devoted to a discussion of the proposition that as a matter of common knowledge and legislative cognizance solicitors for personal injury claims constitute a needless and iniquitous class of intruders inferably acting as runners up for attorneys who specialize in personal injury cases on a percentage basis, saying in part:

"Every city and every locality has its 'personal injury' lawyers, and very often these are surrounded with their solicitors, henchmen, and 'ambulance-chasers.' The resultant exploitation of the unfortunate, in all its shocking, not to say revolting, details, is well known, at least to the legal profession, and widely known by the general public."

Limit of judicial notice in the absence of proof in any case before the court precludes us from fully accepting or discussing certain of those allegations made off the record. Evidently "ambulance-chaser" is a recognized colloquial word of our English vocabulary. It is said to have originally been applied to the unseemly activities of overzealous undertakers in too promptly soliciting contracts in their line of business; but in later years as personal injury litigation increased and ethical restrictions on the legal profession decreased, that sinister compound word appears to have assumed in popular usage the following meaning, as defined by some lexicographers:

"A person, either a lawyer or the agent of a lawyer, who follows up cases of accident in the streets and tries to induce the injured person to bring suit for damages." Cent. Dict. and Cyclop.

It can be fairly said there is a *quantum* of common knowledge that such activities have not been altogether uncommon in recent years; and also with some degree of assurance that the asserted laxity in professional ethics claimed to justify the uncomplimentary epithet used by counsel was accentuated by if not largely the result of legislation which in effect abolished champerty and maintenance, and validated contracts ·between prospective plaintiffs and their attorneys, by which the latter are at liberty to take cases for a contingent fee on a percentage basis; thereby becoming in effect partners or joint adventurers, and indirectly coplaintiffs with their clients in such litigation, at the same time professionally of record in and trying the cases as attorneys and officers of the court.   Such contracts were expressly made by statute valid and enforceable, if unsolicited by the attorney, or any one acting in his behalf or at his request (3 Comp. Laws 1915, § 12079).   A not uncommon type of such 50-50 contracts which the courts under the statute are now required to sustain is that before this court in *Grand Rapids, etc., R. Co.* v. *Cheboygan Circuit Judge,* 161 Mich. 181 (137 Am. St. Rep. 495), where the subject is discussed with citation of authorities.

It is urged for defendant with some plausibility that the definition of "ambulance-chaser" should be enlarged to include certain overzealous claim agents and adjusters of those responsible, or contingently liable, for a tort resulting in personal injury.   There is, however, the marked distinction that they are employees and representatives of those charged with the tort, sent to the injured person for the purpose of an amicable adjustment if possible, not intruding outsiders whose only mission and interest is to solicit and secure employment by representing the injured party in handling his claim.   Unfair settlements obtained by the tort feasor through trickery; misrepresenta-

tion, or fraud have been and would be held void and worthless. If parties themselves are unable to make a fair and satisfactory settlement, the remaining recourse of the claimant naturally points to the courts and employment of legal counsel, rather than to some third party who solicits employment as a middleman.

Based on the proviso in section 1 of the act that "nothing herein shall affect a contract entered into by any person * * * with an attorney" * * * it is contended for defendant as a ground of unconstitutionality that it first makes the bare solicitation of personal injury contracts, whether obtained or not, a criminal offense and contracts so secured void, but validates such contracts when entered into with attorneys whether solicited or not. Although ineptly worded, we do not so construe the proviso. Provisos following an enacting clause are to be given a rational construction in harmony with the ascertainable general purpose and intent of the enactment, considered in its entirety, aided when possible by any other legislation found *in pari materia*. In the light of previous legislation authorizing attorneys to contract their professional services for contingent fees based on a percentage of damages secured, but making such contract void if solicited by them or their agents, the proviso ingrafted on this enacting clause reasonably can and should be construed as intended to exclude possible misinterpretation of the scope of the enactment, the exception by the proviso relating only to such unsolicited contracts as attorneys are authorized by previous legislation to make with clients. The enacting clause simply emphasizes the previous restraint on attorneys which only declared contracts they solicited void, by making them also guilty of a misdemeanor as others if they solicit contracts in cases of personal injury.

There clearly is no class distinction as to persons made by this act. It applies to *any person* who

.solicits such contracts, whatever his calling or station in life, and provides no different degree of punishment for any one.    That only certain persons may be prone to do the forbidden thing while others are not, no more makes it class legislation than a law .against larceny.    The only suggestion of classification in the act is as to the nature of the subject, tort, or thing done for which the claim is made and contract of agency solicited.

The business of the world is carried on through contract relations.    Tort claims arise from incidental wrongs done by one party to another and are based on no contract relation between the parties by which damages can be measured.    Though both are torts, there exists a marked difference between injuries inflicted on the person and injuries done to property, plainly recognizable in fact and reasonably distinguishable in law.    Property, whether personal or real, has as a rule some fairly determinable market value susceptible of definite proof, within limits beyond which neither evidence nor expectation can range.    Market value for personal injuries is unknown.    The measure of damages and rules of proof are distinctly different in injury to property and personal injury cases.    Pain and suffering, disfiguration, permanency, humiliation and other personal elements foreign to property which have no distinct standard of money measurement are permissible elements of damages in the latter.    This may and often does in the minds of many give rise to great expectations and surrounds such claims with a tempting atmosphere of speculation unknown to property tort actions inviting to litigation and exploitation as generally known and so indicated by the proportion of such actions crowding our courts.    These and other special attributes of personal injury claims fairly suggest a reasonable basis of distinction between them and other kinds of claims and even between the kinds of persons who might engage in soliciting them

for collection. Extended discussion of the subject of classification is not necessary for the purposes of this case. The fundamental rule of classification is that it shall not be arbitrary, must be based on substantial distinctions and be germane to the purpose of the law.

Defendant appeals to the unquestioned rule that the right to labor in the employment of others is a property right within the meaning of the Constitution entitling him to sell his services in any lawful business, including the right to make and enforce contracts, of which he may not be arbitrarily deprived by any legislation except in the proper exercise of police power. This act does not deprive him of the right to engage in the business of collecting claims nor prohibit him from making unsolicited contracts with any person injured as the result of an accident. It is but a regulatory law forbidding him under a penalty from running after and soliciting the claims of injured persons. Restraint of solicitation at certain times and places or in a certain manner is but regulatory and has been held a proper exercise of the police power. *Williams* v. *Arkansas*, 217 U. S. 79 (30 Sup. Ct. 493, 18 Ann. Cas. 865).

"The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community." *Crowley* v. *Christensen*, 137 U. S. 86 (11 Sup. Ct. 13). See, also, *Gundling* v. *City of Chicago*, 177 U. S. 183 (20 Sup. Ct. 633).

All presumptions are that this law was regularly enacted in full compliance with all provisions for its adoption and is in conformity with all constitutional requirements. To hold it void the repugnancy must clearly appear. In case of doubt courts will not interfere to declare a regularly enacted statute unconstitutional.

Regulation of certain lawful trades, occupations, and

business activities is a question for the legislature. Its determination comes within the proper exercise of the police power of the State unless affirmatively shown so unreasonable, oppressive, extravagant, and arbitrary as to needlessly invade property or personal rights as protected by the Constitution.

"A statute does not violate the equal protection clause merely because it is not all-embracing.   *   *   * A State may properly direct its legislation against what it deems an existing evil without covering the whole field of possible abuses.   *   *   *   The statute must be presumed to be aimed at an evil where experience shows it to be most felt, and to be deemed by the legislature coextensive with the practical need; and is not to be overthrown merely because other instances may be suggested to which also it might have been applied; that being a matter for the legislature to determine unless the case is very clear.   *   *   * And it is not open to objection unless the classification is so lacking in any adequate or reasonable basis as to preclude the assumption that it was made in the exercise of the legislative judgment and discretion;" citing numerous cases throughout the quotation. *Whitney* v. *California,* U. S. Adv. Ops. 1926, 27, p. 675 (47 Sup. Ct. 641).

For the reasons given, we are of opinion this act is a proper police regulation within legislative power. If necessary, the writ may be granted as prayed for.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.