[File No. 5991.]

ROBERT PETERSON, Respondent, v. WILLIAM PANOVITZ, Appellant.

(— A.L.R. —, 243 N. W. 798.)

Opinion filed July 14, 1932.

*George A. Bangs,* for appellant.

*O'Keefe & Peterson,* for respondent.

CHRISTIANSON, Ch. J.   Plaintiff brought this action to recover damages for personal injuries which he claims to have sustained by reason of a collision (on August 3rd, 1930) between a truck, driven by the plaintiff, and an automobile belonging to the defendant, driven and operated by a member of defendant's family.   The defendant interposed an answer wherein he admitted that the plaintiff was injured as a result of the collision, and alleged that after such collision plaintiff made a claim against the defendant for damages on account of such injuries; that thereupon an adjustment and settlement of such claim was made and that there was paid to the plaintiff the sum of $600.00 by a certain insurance company; that plaintiff accepted such sum as payment and settlement in full for all damages suffered by him as a result of such collision, and that the plaintiff executed and delivered a written release, dated August 13th, 1930, wherein and whereby the plaintiff, in consideration of said sum of $600.00 released and discharged all claims and demands against the defendant, which said plaintiff then held on account of injuries arising as a result of said collision.

The plaintiff interposed a reply to the answer wherein he alleged that the written release was executed by the plaintiff on "the 13th day of August, 1930, while plaintiff was under physical disability from the effect of the injuries received and as alleged in plaintiff's complaint, and also within 30 days after the date of such injuries so sustained" by the plaintiff; that plaintiff thereafter elected to avoid said settlement and release and notified defendant of such election in writing within six months after the date of the injury; that said release so given on August 13, 1930, became and is void by virtue of the provisions of chapter 179, Laws 1917 (§§ 5941A1, 5941A2, 1925 Supplement).

The defendant demurred to the reply on the ground that the same did not set forth facts sufficient to constitute any defense to the settlement, release, satisfaction or discharge set forth in the answer; that said chapter 179, Laws 1917 (§§ 5941A1, 5941A2, 1925 Supplement) under which plaintiff claims the right to disaffirm and repudiate the settlement and the written release executed by him is void and of no effect

because in conflict with §§ 11 and 13 of the Constitution of the state of North Dakota and the First, Fifth and Fourteenth Amendments to the Constitution of the United States.

The sole question presented on this appeal is the constitutional question raised by the demurrer.

The statute, the validity of which is drawn in question, reads as follows:

"Sec. 1. Every settlement or adjustment of any cause of action and every contract of retainer or employment to prosecute an action for damages on account of any personal injuries received, whether death ensue or not to the person injured, shall be voidable if made while the person so injured is under disability from the effect of the injury so received, or if made within thirty days after the date of such injury.

"Sec. 2. The person so injured, or in case of his death, his personal representative, may elect, at any time within six months after the date of such injury to avoid such settlement, adjustment or contract by a notice in writing to that effect or by bringing an action to recover damages therefor. Whenever such action shall be so commenced, within the period of time so limited, the amount received by the person so injured or his representative in case of his decease, in any settlement or adjustment so made, shall not be a bar to the prosecution of such action, but may be set up as an offset or counterclaim to the amount of damages recoverable, if any."

"Sec. 3. All acts and parts of acts in conflict with the provisions of this act are hereby repealed."

It is the contention of the defendant that the statute infringes rights guaranteed by §§ 1, 11 and 13 of the Constitution of North Dakota and by the First, Fifth and Fourteenth Amendments to the Constitution of the United States, and that consequently, the statute is void and of no effect.

1. Appellant's first contention is that the statute interferes with, and in effect denies, the liberty of contract guaranteed by § 13 of the Constitution of the state of North Dakota and the 14th Amendment to the Constitution of the United States.

That the statute does interfere in some degree with the freedom to make contracts which formerly existed cannot be denied. In the absence of the statute, of course, the parties who fall within its provi-

sions might make a contract for the settlement of damages resulting from personal injuries immediately after such injuries have been sustained, absolutely binding upon both parties; whereas, under the statute a contract for the settlement or adjustment of such injuries is voidable at the option of the injured party if made while the person so injured is under disability from the effect of the injury, or, if made within thirty days after the injury. It does not follow, however, from the fact that certain limitations have been prescribed as regards such contracts that the statute is unconstitutional; for the right of contract is itself subject to certain restrictions which the state may lawfully impose in the exercise of its police power. Holden v. Hardy, 169 U. S. 366, 391, 42 L. ed. 780, 790, 18 S. Ct. 383; Minnesota Iron Co. v. Kline, 199 U. S. 593, 598, 50 L. ed. 322; 325, 26 S. Ct. 159, 19 Am. Neg. Rep. 625.

As was said by the Supreme Court of the United States in the case of Chicago, B. & Q. R. Co. v. McGuire, 219 U. S. 563, 55 L. ed. 337, 31 S. Ct. 259:

"There is no absolute freedom to do as one wills or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community. . . . Where the legislative action is arbitrary and has no reasonable relation to a purpose which it is competent for government to effect, the legislature transcends the limits of its powers in interfering with liberty of contract; but where there is reasonable relation to an object within the governmental authority, the exercise of the legislative discretion is not subject to judicial review. The scope of judicial inquiry in deciding the question of power is not to be confused with the scope of legislative considerations in dealing with the matter of policy. Whether the enactment is wise or unwise, whether it is based on sound economic theory whether it is the best means to achieve the desired result, whether, in short, the legislative discretion within its prescribed limits should be exercised in a particular manner, are matters for the judgment of the legislature, and the earnest conflict of serious opinion does not suffice to bring them within

the range of judicial cognizance. . . . The legislature, being familiar with local conditions, is, primarily, the judge of the necessity of such enactments. The mere fact that a court may differ with the legislature in its views of public policy, or that judges may hold views inconsistent with the propriety of the legislation in question, affords no ground for judicial interference, unless the act in question is unmistakably and palpably in excess of legislative power. . . . If there existed a condition of affairs concerning which the legislature of the state, exercising its conceded right to enact laws for the protection of the health, safety, or welfare of the people, might pass the law, it must be sustained; if such action was arbitrary interference with the right to contract or carry on business, and having no just relation to the protection of the public within the scope of legislative power, the act must fail."

The object the North Dakota legislature had in mind in enacting the statute under consideration here is quite obvious. It sought to deal with and exercise some control over the undesirable practice commonly known as "ambulance chasing." North Dakota is not the only state that has found it necessary or desirable to look for some means of control over this practice. Journal of American Judicature Society, August 1928, pp. 36–40; Kelley v. Judge of Recorder's Ct. 239 Mich. 204, 53 A.L.R. 273, 214 N. W. 316.

There are two sides to the problem of ambulance chasing; on one side is the unprofessional attorney who solicits a retainer or contract of employment to handle the claim, in personal injury cases, generally on a contingent fee basis (Kelley v. Judge of Recorder's Ct., supra; Re Newell, 174 App. Div. 94, 160 N. Y. Supp. 275); on the other side are certain unscrupulous runners or adjusters who seek to obtain adjustments of any possible claim for damage in cases where personal injuries have been sustained in circumstances creating a basis for a claim against their employers. Gilmore v. Western Electric Co. 42 N. D. 206, 211, 172 N. W. 111, 113. Experience has demonstrated that the two accompany and aggravate each other,—each furnishing in part the reason advanced as a justification for the other. In both cases the interests of the injured party are given little or no consideration; and the agreements obtained by one class are frequently or generally as unconscionable as those obtained by the other. The records in cases which have been presented to this court bear eloquent testimony that the

activities of both have resulted not only in damage to parties who have sustained personal injuries in an accident but have resulted as well in loss and injury to the public through ill-advised, vexatious and needless litigation. Generally the unfortunate results could and would have been avoided if some reasonable time had elapsed after the accident before binding settlements or adjustments had been made.

It will be noted that the statute does not purport to prevent the parties from making a settlement of a claim for personal injuries. Such settlement may be made immediately after the injuries have been sustained; but the settlement is voidable at the option of the injured party for a certain period of time. However, at the expiration of the time prescribed the settlement becomes final. If, under the terms of the settlement, payment has been made to the injured party, the person who has made such payment will be entitled to full credit therefor upon any claim for damages the injured party may have, in the event he elects to avoid the settlement. In short, in such case, under the terms of the statute the ultimate result will be to give to each that to which he is justly entitled. Of course, if they so desire, the parties may make settlement, agree upon the terms and defer payment of the consideration until, or have such consideration placed in the hands of a third party or depositary to be paid over at a time when, the contract is no longer subject to avoidance by the injured party. That the operation of the statute does not in fact seriously interfere with the freedom of contract is quite apparent when it is considered that this statute has been in force for almost fifteen years, that during that time thousands of transactions have arisen in this state subject to its provisions, yet (so far as the records of this court show) the validity of the statute has not heretofore been drawn in question except in one case.

A state may circumscribe the individual's liberty of contract in order to promote the health, safety, morals and welfare of those subject to its jurisdiction. 6 R. C. L. p. 273. "A large discretion 'is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests.'" Holden v. Hardy, 169 U. S. 366, 392, 42 L. ed. 780, 791, 18 S. Ct. 383; Lawton v. Steele, 152 U. S. 133, 136, 38 L. ed. 385, 388, 14 S. Ct. 499. Thus, a state in the interest of the public morals and to promote the common good may require certain contracts

to be in writing and thereby remove the temptation to perpetrate fraud by perjury. Selvage v. Talbott, 175 Ind. 648, 95 N. E. 114, 33 L.R.A. (N.S.) 973, Ann. Cas. 1913C, 724; Baker v. Gillan, 68 Neb. 368, 94 N. W. 615; Ross v. Kaufman, 48 Wash. 678, 94 Pac. 641. It may inhibit and render invalid contracts whereby an employee of a railroad company contracts with his employer for an avoidance or reduction of damages in event such employee sustains injury in the course of his employment. McGuire v. Chicago, B. & Q. R. Co. 131 Iowa, 340, 108 N. W. 902, 219 U. S. 549, 55 L. ed. 328, 31 S. Ct. 259.

A state may prescribe the rate of interest for which parties may contract, and make it unlawful to contract for a higher rate than that specified. 27 R. C. L. p. 204; 15 R. C. L. p. 19. A state may require all contracts for the payment of a rate of interest higher than the legal rate to be in writing and render invalid oral contracts relating to such interest. 33 C. J. 233. A state may, without invading the constitutional rights of an insurer, provide that every insurance company engaged in the business of insuring against loss by hail shall be bound, and the insurance shall take effect, from and after twenty-four hours from the day and hour of application unless the insurer notifies the applicant by telegram of the rejection of the application; and may render invalid any contract between the parties seeking to obviate the liability of the insurer as so prescribed. Wanberg v. National U. F. Ins. Co. 46 N. D. 369, 179 N. W. 666; National Union F. Ins. Co. v. Wanberg, 260 U. S. 71, 67 L. ed. 136, 43 S. Ct. 32.

A state may proscribe the practices of the so-called "ambulance chaser" and make contracts of retainer or employment obtained by him void. Kelley v. Judge of Recorder's Ct. 239 Mich. 204, 214 N. W. 316, 53 A.L.R. 273. See also Re Newell, 174 App. Div. 94, 160 N. Y. Supp. 275.

Appellant lays great stress on the inconvenience which he claims the statute places upon a person who has sustained personal injuries; and it is argued that this is of such nature as to infringe constitutional rights. It is argued, for instance, that if a resident of this state is injured by a non-resident, who is traveling through the state, the injured party is in effect deprived not only of the right to make settlement with the party who caused the injury but is precluded from bringing suit against such party in the courts of this state while he is within and sub-

ject to their jurisdiction. Whether this statute may be applied to the disadvantage of a party who has sustained personal injuries in such manner as to invade his constitutional rights is not before us. Here the injured party is not complaining. He is not asserting that the statute has infringed his constitutional rights. Here the party who caused the injury is assailing the validity of the statute. Hence the question involved here is whether the statute is violative of the constitutional rights of such party; for a party can question the constitutionality of a statute only when and insofar as it is applied to his disadvantage. State ex rel. Hughes v. Milhollan, 50 N. D. 184, 195 N. W. 292; State v. First State Bank, 52 N. D. 231, 202 N. W. 391; Minot Special School Dist. v. Olsness, 53 N. D. 683, 208 N. W. 968, 45 A.L.R. 1337.

As pointed out, however, the statute does not prohibit the parties from making settlement. Neither does it inhibit the injured party from instituting an action. The statute merely renders settlements and contracts of retainer voidable if made within the proscribed period. If contracts are so made they remain in force until rescinded. If fair and honest such contracts probably will not be avoided; if avoided by the injured party, the rights of the parties thereto will be controlled by applicable legal principles.

We are not prepared to say that the legislature invaded the constitutional rights of the appellant by prescribing the conditions which it did as regards a settlement or adjustment of a claim for personal injuries.

It is next contended that the statute violates, § 11 of the Constitution of the State of North Dakota, which provides that all laws of a general nature shall have a uniform operation; also, that it denies the equal protection of the laws guaranteed by § 13 of the Constitution of North Dakota and the Fourteenth Amendment to the Constitution of the United States. This contention is predicated upon the theory that there is no basis for the classification sought to be made in the statute. It is argued, for instance, that if an automobile accident occurs and the automobile is damaged, and the owner thereof sustains personal injuries, that under the statute the owner may at once make settlement for the damage to his car and that such settlement is not affected by the statute but that he may not make a settlement for the injuries sustained to his person except under the terms prescribed by the statute. And it is said there is no reason for the distinction sought to be made between

the two classes of claims. We are not impressed with the force of this contention. Injury to a piece of property may be ascertained with a fair degree of accuracy at once. The injury to a human cannot be so readily ascertained. Gilmore v. Western Electric Co. 42 N. D. 206, 211, 172 N. W. 111, 113. There is far less likelihood of imposition and fraud in settlements relating to injuries to property than there is as regards settlements for injuries to the person. We are not prepared to say that there is not sufficient distinction here to justify the legislature in making the classification which it did. The legislature has power to classify persons and subjects for the purpose of legislation, and to enact laws applying specially to such classes, and while the laws thus enacted act uniformly upon all members of the class, they are not vulnerable to the constitutional inhibition under consideration here. 3 R. C. L. pp. 376, 377. Of course, the legislative power is not without limit. It is not an arbitrary one waiting the whim of the legislature. Its exercise must always be within the limits of reason, and of a necessity more or less pronounced.

The uniform operation required by the constitution does not mean universal operation.

"A general law may be constitutional, and yet operate in fact only upon a very limited number of persons or things, or within a limited territory. But, so far as it is operative, its burdens and benefits must bear alike upon all persons and things upon which it does operate, and the statute must contain no provision that would exclude or impede this uniform operation upon all citizens, or all subjects and places within the state, provided they were brought within the relations and circumstances specified in the act." Vermont Loan & T. Co. v. Whithed, 2 N. D. 82, 93, 94, 49 N. W. 318. See also 6 R. C. L. pp. 373, et seq.

We are not prepared to say that the legislature was not justified in making the classification which it made in the statute under consideration here.

It follows that the order appealed from must be and it is affirmed.

BURKE, BIRDZELL, NUESSLE and BURR, JJ., concur.