555 P.2d 707

**Earl M. MITSCHELEN, Plaintiff-Appellee and Cross-Appellant,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant and Cross-Appellee.**

**Nos. 2365, 2406.**

Court of Appeals of New Mexico.

Sept. 14, 1976.

Certiorari Denied Oct. 21, 1976.

John A. Klecan, Klecan & Roach, Albuquerque, for State Farm Mut. Auto. Ins.

LeRoi Farlow, Sarah M. Bradley, Albuquerque, for Earl M. Mitschelen.

## OPINION

SUTIN, Judge.

■ Defendant appeals an adverse judgment arising out of an uninsured motorist protection policy. This appeal is limited to the issue of whether a release prepared by defendant and signed by plaintiff, without acknowledgment, was valid, and barred additional recovery by plaintiff against defendant. Plaintiff cross-appealed on the grounds that the trial court denied his claim for punitive damages. We affirm.

### A. *Facts on Defendant's Appeal.*

Plaintiff was involved in an automobile accident in August, 1973, which gave rise to his claim for relief under the terms of defendant's insurance policy.

Plaintiff injured his right shoulder. After several months of difficulty, including frequent visits to Dr. Segarra, plaintiff saw Dr. Trusell in October and November. On October 19, while at work, plaintiff grabbed for a falling sack with his left arm while attempting to protect his injured right arm, and tore the tendons in his left arm. Plaintiff was advised to undergo surgery on his right arm, and was later advised that he would need an operation on his left arm.

On October 29, plaintiff executed an *unnotarized* Release and Trust Agreement prepared by defendant which provided that it was "in full settlement and final discharge of all claims under the above numbered policy because of bodily injuries, known and unknown and which have resulted or may in the future develop . . . ."

Surgery on the right arm was performed in December, 1973. Surgery on the left arm was performed in January, 1974. He remained under Dr. Trusell's care until April 29, 1974. This action was filed on April 1, 1974.

The trial court held the release void because it was not acknowledged before a disinterested notary public under § 21–11–1 (C), N.M.S.A.1953 (Repl.Vol. 4, 1975 Supp.).

### B. *Settlements, Releases and Statements Statute.*

■ New Mexico has an unique statute regulating this issue, enacted in 1971. We shall refer to it as "The Release Act".

Section 21–11–1 reads:

*Settlements, releases and statements of injured patients—Acknowledgment required—Notice.*—A. No person whose interest is or may become adverse to a person injured who is either under the care of a person licensed to practice the healing arts, or confined to a hospital or sanitarium as a patient shall, within fifteen [15] days from the date of the occurrence causing the person's injury:

(1) negotiate or attempt to negotiate a settlement with the injured patient; or

(2) *obtain* or attempt to obtain *a general release of liability from the injured patient*; or

(3) obtain or attempt to obtain any statement, either written or oral from the injured patient for use in negotiating a settlement or obtaining a release.

B. Any settlement agreement entered into, *any general release of liability* or any written statement made by any person who is under the care of a person licensed to practice the healing arts or is confined in a hospital or sanitarium after he incurs a personal injury, which is not obtained in accordance with the provisions of section 2 [21–11–2] of this act [21–11–1, 21–11–2], *requiring notice and acknowledgment, may be disavowed by the injured person within fifteen [15] days after his discharge from the care of the persons licensed to practice the healing arts* or his release from the hospital or sanitarium, whichever occurs first, and such statement, release or settlement shall not be evidential in any court action relating to the injury.

C. *Any settlement agreement, any release of liability or any written state-*

ment shall be void unless it is acknowledged by the injured party before a notary public who has no interest adverse to the injured person. [Emphasis added]

Section 21–11–2 reads: ·

*Settlements, releases and statements— Applicability.*—The provisions of this act [21–11–1, 21–11–2] relating to settlements, releases and statements obtained, by a person whose interest is or may become adverse, from a patient confined in a hospital or sanitarium or being treated by a person licensed to practice the healing arts, shall not apply, if at least five [5] days prior to obtaining the settlement, release or statement, the injured party has signified in writing, *by a statement acknowledged before a notary public, who has no interest adverse to the injured party,* his willingness that a settlement, release or statement be given. [Emphasis added]

New Mexico has indicated that, absent a valid acknowledgment, a written instrument is void if the statute expressly so provides. In *Vorenberg v. Bosserman,* 17 N.M. 433, 130 P. 438 (1913), a chattel mortgage was not properly acknowledged. Under the statute then existing, the chattel mortgage was valid between the parties. The Court said:

> It is further urged that the absence of a valid acknowledgment rendered the instrument void. The argument is clearly unsound. The general doctrine is that, *in absence of statute expressly so providing,* an acknowledgment is no part of an instrument, *and·is not necessary to its validity.* [Emphasis added] [17 N.M. at 440, 130 P. at 440]

Section 21–11–1(C) expressly provides that there be an acknowledgment before a notary public. Under this provision, we hold that the acknlowedgment is a part of the release, and it is necessary to its validity.

### C.  The Meaning of Subsection C.

*Subsection A* provides that defendant shall not obtain *a general release* of liability from plaintiff within 15 days from the date of the occurrence that caused plaintiff's injury.

*Subsection B* provides that any such *"general release"* may be disavowed by plaintiff within 15 days after his discharge by the doctor. [Emphasis added]

*Subsection C* provides that *"any release of liability . . .* shall be void unless it is acknowledged by the injured party before a notary public . . . ." [Emphasis added]

It is reasonable to infer that the phrase "any release of liability" in subsection C refers back to the "general release" stated in subsections A and B.

The legislative purpose is clear; the statute was enacted to prevent injustice to a claimant while he is hospitalized or under the care of a doctor. A release obtained contrary to this statute "is often called in personal injury cases a 'rush release', and is executed in a situation wherein there exists a high potential of error. Recognizing this great possibility for error inherent in rush releases, the legislatures of at least seven states [by 1963] have passed measures affecting their validity, and two of these have expressly labeled them as 'crimes against public policy'." *Wise v. Prescott,* 244 La. 157, 151 So.2d 356, 361 (1963).

The Release Act expresses the public policy of New Mexico. Subsection C simply adds another notch to the belt of an injured person and widens his area of protection. An insured member of the public is often subject to oppressive practices employed by insurance companies to obtain a favorable settlement or release. With The Release Act, the legislature has not expressed condonation of oppressive conduct on the part of the insured, as defendant contends; the insurer is protected by law, if it can prove the insured fabricated a

claim. Under The Release Act, the burden is on the insurer to play the game with fairness and impartiality.

The requirement that the insurer deal fairly is expressed in *Peterson v. Panovitz*, 62 N.D. 328, 243 N.W. 798, 84 A.L.R. 1290 (1932). By statute, a settlement was voidable if made within 30 days after the date of the injury, when the person injured was under disability; one so injured could elect at any time within six months after the injury to avoid the settlement. A release was obtained from plaintiff within 30 days after a collision, but he elected within six months of the collision to avoid the release. We quote at length to demonstrate the spirit which meets the test of fair play, as well as the need to protect the public. The Court said:

The object the North Dakota Legislature had in mind in enacting the statute under consideration here is quite obvious. It sought to deal with and exercise some control over the undesirable practice commonly known as "ambulance chasing." North Dakota is not the only state that has found it necessary or desirable to look for some means of control over this practice. [Citations omitted].

There are two sides to the problem of ambulance chasing; on one side is the unprofessional attorney who solicits a retainer or contract of employment to handle the claim, in personal injury cases, generally on a contingent fee basis [citations omitted]; on the other side are certain unscrupulous runners or adjusters who seek to obtain adjustments of any possible claim for damage in cases where personal injuries have been sustained in circumstances creating a basis for a claim against their employers [citation omitted]. Experience has demonstrated that the two accompany and aggravate each other, each furnishing in part the reason advanced as a justification for the other. In both cases the interests of the injured party are given little or no consideration; and the agreements obtained by one class are frequently or generally as unconscionable as those obtained by the other. *The records in cases which have been presented to this court bear eloquent testimony that the activities of both have resulted not only in damage to parties who have sustained personal injuries in an accident, but have resulted as well in loss and injury to the public through ill-advised, vexatious, and needless litigation.* Generally the unfortunate results could and would have been avoided if some reasonable time had elapsed after the accident before binding settlements or adjustments had been made. [Emphasis added] [243 N.W. at 800]

*D. Defendant's Contentions.*

In its request for a transcript of a portion of the proceedings, defendant stated as its issue on appeal:

The appellant intends to urge on appeal that the release signed by Earl M. Mitschelen is valid and the jury should have been allowed to consider the same.

The only question before us is whether subsection C is valid.

Defendant's contentions will be dealt with seriatim.

*E. The statute has application to the facts of this case.*

Prior to the adoption of this statute, a release of a claim for injuries was void where procured by fraud, undue influence, mutual mistake or coercion. *Woods v. City of Hobbs,* 75 N.M. 588, 408 P.2d 508 (1965); *Mendenhall v. Vandeventer,* 61 N.M. 277, 299 P.2d 457 (1956). The Release Act has granted yet another remedy.

To determine legislative intent, we read the entire act as a whole. Each part is construed in connection with every other part so as to produce a harmonious whole. *Trujillo v. Romero,* 82 N.M. 301, 481 P.2d 89 (1971). By this rule, in this case, we hold that § 21–11–1(C), when read together with subsections A and B, means that "any release of liability" means any "general release" obtained "within 15

days" from the date of the occurrence that caused plaintiff's injury, or a "general release" that is disavowed by plaintiff within 15 days after his discharge by the doctor. Plaintiff was under the care of a doctor at the time the release was obtained by defendant; therefor, this statute is applicable to the facts of this case.

F. *The statute is not an unconstitutional infringement on the right to contract.*

Article II, Section 19 of the New Mexico Constitution provides that "No . . . law impairing the obligation of contracts shall be enacted by the legislature." Impairment of the obligation of a contract was defined in *Rubalcava v. Garst,* 53 N.M. 295, 206 P.2d 1154 (1949) which, quoting from 1 Cooley's Constitutional Limitations, 8th Ed., p. 583, says:

" ' . . . [*h*]*ence any law which in its operations amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the Constitution.'* " [Emphasis added] [53 N.M. at 298]

█ The phrase "a denial or obstruction of the rights accruing by a contract" does not grant an absolute freedom to contract; every contract is subject to legislative supervision which provides restrictive safeguards. Such restrictions may be imposed by the exercise of the police powers of the state.

In *Peterson v. Panovitz,* supra, the Court said:

That the statute does interfere in some degree with the freedom to make contracts which formerly existed cannot be denied. . . . *It does not follow, however, from the fact that certain limitations have been prescribed as regards such contracts that the statute is unconstitutional; for the right of contract is itself subject to certain restrictions which the state may lawfully impose in the exercise of its police power.* [Citations omitted]

As was said by the Supreme Court of the United States in the case of *Chicago, B. & Q. R. Co. v. McGuire,* 219 U.S. [549] 563, 31 S.Ct. 259, 262, 55 L.Ed. [328] 337: "There is no absolute freedom to do as one wills or to contract as one chooses. *The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards.* Liberty, implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community. * * *"

Here the party who caused the injury is assailing the validity of the statute. Hence the question involved here is whether the statute is violative of the constitutional rights of such party; for a party can question the constitutionality of a statute only when and in so far as it is applied to his disadvantage. [Citations omitted]

As pointed out, however, the statute does not prohibit the parties from making settlement. Neither does it inhibit the injured party from instituting an action. The statute merely renders settlements and contracts of retainer voidable if made within the proscribed period. If contracts are so made they remain in force until rescinded. If fair and honest, such contracts probably will not be avoided; if avoided by the injured party, the rights of the parties thereto will be controlled by applicable legal principles. *We are not prepared to say that the Legislature invaded the constitutional rights of the appellant by prescribing the conditions which it did as regards a settlement or adjustment of a claim for personal injuries.* [Emphasis added] [243 N.W. at 800, 801, 802]

█ Here, the statutory requirement of an acknowledgment did not impair the obligation of the contract; the acknowledg-

ment was an integral part of the contract. It was a "restrictive safeguard." It did not prohibit defendant from obtaining a valid release, nor did the requirement restrain the freedom of the parties to contract.

The statute does interfere in some minor degree with defendant's freedom to contract with plaintiff. But we cannot judicially interfere unless the statute is unmistakably and palpably in excess of legislative power. It is not.

G. *That the notarization bears no relationship to the substance of the settlement contract is irrelevant. It does bear on the validity of the release.*

■ Defendant contends that notarization bears no relationship to the substance of the settlement contract. While this may be true, it is irrelevant, as notarization does bear upon the validity of the release.

New Mexico has authorized short forms of acknowledgment. Section 43–1–15, N. M.S.A.1953 (Repl.Vol. 7).

As used in the short form, § 43–1–17 provides that the words "was acknowledged" shall mean:

(a) In the case of a natural person acknowledging that such person personally appeared before the officer taking the acknowledgment and acknowledged that he executed the acknowledged instrument as his free act and deed for the uses and purposes therein set forth.

Section 43–1–18 reads:

Any acknowledgment taken and certified as provided by law shall be prima facie evidence of the execution of the instrument by the parties acknowledging the same, in all of the courts of this state.

■ An acknowledgment is a formal declaration or admission before an authorized public officer by a person who has executed an instrument that such instrument is his free act and deed. 1 C.J.S. Acknowledgments § 1 (1936); 1 Am.Jur.2d Acknowledgments § 1 (1962). A certificate of acknowledgment is prima facie evidence of the execution of the instrument acknowledged. It is not conclusive and may be impeached by clear and convincing evidence. *Garcia v. Leal,* 30 N.M. 249, 231 P. 631 (1924).

Section 21–11–1(C) expresses the legislative mandate by providing another precaution in favor of the plaintiff, with the required acknowledgment "before a notary public who has no interest adverse to the injured person."

In re *Estate of Burleson,* 24 N.C.App. 136, 210 S.E.2d 114 (1974), the Court held that a dissent from a will by a surviving wife was invalid because it was not acknowledged, despite the fact that her signature was attested by a witness. The Court said:

In 1959 the legislature, in an effort to avoid disputes concerning the genuineness of dissents, amended the statute to provide that dissents *must be acknowledged.* 1959 N.C. Session Laws, ch. 880. *To hold that the signature by a subscribing witness satisfies the acknowledgment required by G.S. § 30–2(b) would constitute judicial repeal of the 1959 amendment.*

. . . . . .

Although we sympathize with petitioner, we are compelled to hold that her dissent was invalid within the requirements of G.S. § 30–2(b). *The statute is an expression of legislative policy which we will not vitiate.* [Emphasis added] [210 S.E.2d at 115]

H. *The statute does not violate Article IV, Section 16 of the New Mexico Constitution.*

Article IV, Section 16, of the New Mexico Constitution provides in part:

The subject of every bill shall be clearly expressed in its title, and no bill embracing more than one subject shall be passed . . . ..

Defendant contends that the title of The Release Act "does not accurately give notice of the fact that a notarization is required on all releases before they are valid." The title of the Act is: "An act relating to the settlement or release of liability for personal injury or property damage; and prohibiting settlements, releases and statements or their solicitation in certain situations."

Precedent follows the test set forth in *State v. Ingalls,* 18 N.M. 211, 135 P. 1177 (1913), which says:

In our opinion, the true test of the validity of a statute under this constitutional provision is: Does the title fairly give such reasonable notice of the subject-matter of the statute itself as to prevent the mischief intended to be guarded against? If so, the act should be sustained. [18 N.M. at 219, 135 P. at 1178.]

The subject of The Release Act was "prohibiting settlements, releases and statements or their solicitation in certain situations." We hold that notarization of a release, which is one fact that bears upon its validity, is not a hidden provision in The Release Act.

We reach this conclusion from those rules, stated repeatedly, which protect statutes from attack under this constitutional provision. *City of Raton v. Sproule,* 78 N.M. 138, 429 P.2d 336 (1967).

Article IV, Section 16, reads:

*The subject* of every bill shall be clearly expressed in its title . . .. [Emphasis added]

"We are firmly committed to the policy of applying a liberal construction to a specific title as well as to one containing broad and comprehensive language. In pursuance of such policy, the term 'subject,' as used in the Constitution, is to be given a broad and extended meaning so as to authorize the legislature to include in one act *all matters having a logical or nat-*

*ural connection."* [Emphasis added]. *Silver City Consolidated School District No. 1 v. Board of Regents,* 75 N.M. 106, 110, 401 P.2d 95, 98 (1965).

Acknowledgment of a signature on an instrument, like a release, is a matter of common usage. See Modern Legal Forms, § 7551, et seq. (1969) which sets forth forms of releases in tort claims. Acknowledgments have a logical and natural connection with releases.

The terms "prohibiting . . . releases" in the title of the Act, phrased in broad and comprehensive language, includes within the subject matter of the Act the notarization of the release, as an element essential to its validity. To state that the release is void if not acknowledged is consonant with the phrase "prohibiting . . . releases". See *City of Albuquerque v. Campbell,* 68 N.M. 75, 358 P.2d 698 (1960); *State v. Ingalls,* supra; *State v. Thomson,* 79 N.M. 748, 449 P.2d 656 (1069); *City of Albuquerque v. Garcia,* 84 N.M. 776, 508 P.2d 585 (1973).

We hold that the title of The Release Act gives reasonable notice of the subject matter of the statute, and that it does not violate Article IV, Section 16, of our Constitution.

I. *Plaintiff was not entitled to punitive damages.*

Plaintiff claims the trial court erred in refusing to submit the issue of punitive damages to the jury. At the close of plaintiff's case, the trial court ruled that plaintiff failed to make a prima facie case of any malicious, willful, wanton and intentional conduct on the part of the defendant or any of its employees. We agree.

Affirmed.

IT IS SO ORDERED.

HERNANDEZ and LOPEZ, JJ., concur.