591 P.2d 278

**Paul J. BOLLES, Petitioner,**

v.

**Cleo W. SMITH, Administratrix of the Es-
tate of Ronnie D. Kelly, Deceased, and
Transport Indemnity Company, Don
Ward and Company, Respondents.**

**No. 12098.**

Supreme Court of New Mexico.

Feb. 23, 1979.

Horton, Roybal & Crollett, Adams & Foley, Albuquerque, for petitioner.

Rodey, Dickason, Sloan, Akin & Robb, Charles B. Larrabee, Civerolo, Hansen & Wolf, Albuquerque, for respondents.

## OPINION

FEDERICI, Justice.

Our original opinion is withdrawn and the following opinion substituted therefor. The result of our original opinion is not changed; however, it was deemed necessary to add language to restrict the application of the rule of law announced to cases arising under §§ 41–1–1, et seq., N.M.S.A. 1978 (formerly §§ 21–11–1, et seq., N.M.S. A.1953 (Supp.1975)) and to the specific facts in this case.

Paul J. Bolles, plaintiff (petitioner), brought this action for personal injuries received in 1974 in an automobile accident arising out of his employment with Don Ward & Company (plaintiff-in-intervention). Sometime after the accident petitioner began to have seizures. The medical evidence indicated that there was a probability that the seizures were brought about by the accident.

A settlement agreement was entered into on petitioner's behalf by his original attorney. Petitioner was not happy with the settlement. At his attorney's suggestion, petitioner had another attorney evaluate the case. Subsequently, petitioner changed attorneys. Petitioner never accepted the check which had been sent to his original attorney pursuant to the settlement and never signed any settlement agreement. No judgment or dismissal had been entered by the court on the release, nor had the action been dismissed under N.M.R.Civ.P. 41(a)(1) or (2), N.M.S.A.1978.

Cleo Smith, defendant (respondent), filed a motion to enforce the alleged oral settlement agreement. The motion was granted by the trial court, and an order and judgment was entered for respondent. Petitioner appealed and the Court of Appeals affirmed, Judge Sutin dissenting. We reverse.

The issue on this appeal is whether the oral settlement agreement entered into by petitioner's attorney on petitioner's behalf can be enforced, notwithstanding the fact that it was rejected by petitioner prior to its approval by the court, or its dismissal under Rule 41(a)(1) or (2). We hold that under the facts in this case it cannot. The Release Act of New Mexico, §§ 41–1–1 and 41–1–2, prohibits settlements, releases or their solicitation while an injured person is under the care of a person licensed to practice the healing arts, or confined to a hospital or sanitarium, unless certain conditions are met. Section 41–1–1C of the Act provides that:

> Any settlement agreement, any release of liability or any written statement shall be void unless it is acknowledged by the injured party before a notary public who has no interest adverse to the injured person.

Clearly the application of this Act is limited to injured persons under the care of a person licensed to practice the healing arts or confined to a hospital or sanitarium.

Respondent contends that petitioner was not under the *actual and continuous* care of a person licensed to practice the healing arts. Section 41–1–1 does not state that the care must be actual *and* continuous, nor does it limit the time within which the care must be provided. A change in the law is a matter for the Legislature. In the meantime, the courts must construe the statute as it exists based upon the facts presented in each case. We agree with respondent that the statute is restrictive and that care must be provided in good faith and must be reasonably required.

The evidence introduced in this case makes it abundantly clear that petitioner was under the "care" of a person licensed to practice the healing arts at the time the proposed oral settlement was entered into and that the Release Act of New Mexico applies to the settlement.

At the hearing on the motion by respondent to enforce the oral agreement, petitioner and his wife testified that he had been visiting and was under the care of Dr. Rudolph Maier, Dr. Leroy Miller, and Dr. Theodore Sadock at various times from the date of accident in 1974 through November 15, 1977, the date the proposed oral agreement allegedly was reached.

Dr. Maier testified that petitioner had been under his care from December 1974 to March 18, 1977, the day of the motion hearing. The testimony was as follows:

Q. Now, you mentioned this first visit in December of '74. Were there other visits later on?

A. Yes, sir. I have seen Mr. Bolles off and on over the years, the latest visit being December 29th, 1976.

Q. Now, has he been under your care all during that time?

A. Yes, sir. I have communicated with him, prescribed medicines and so on.

Q. Is he still under your care?

A. Yes.

Q. And for what condition have you been treating him all of this time?

A. He has convulsions, generalized convulsions with focal onset, which is suggestive of a localization in the temporal lobes. He still has some residual complaints, mainly lapses, in which he has a feeling of a dreamy kind of feeling as though he had been in the particular situation he finds himself in presently . . .

Respondent urges that the seizures were not the result of head injuries received in the accident. Again, the record makes it abundantly clear, at least for purposes of the motion hearing, that as a matter of medical probability the seizures did result from the accident. In Dr. Maier's report of February 21, 1975, he stated that since petitioner had received two head injuries, one prior to and not connected with the accident and one at the time of the accident, he could not be sure which injury caused the seizures. However, he also stated that it would be difficult for him to say that petitioner's head injury from the 1974 accident did not cause the seizures.

After petitioner changed attorneys, and upon a request made by his new attorney, Dr. Maier reviewed petitioner's history, various medical reports, and other documents and facts, and consulted with several experts in the field of neurology and neurosurgery. Based upon this review, he testified at the motion hearing that a head injury probably occurred at the time of the 1974 accident and that the epilepsy was probably a result of that injury. He also concluded that it was within the realm of medical probability that the second head injury, from the 1974 accident, was responsible for, and the more probable cause of, the epilepsy. Dr. Leroy Miller, in his report of July 12, 1976, stated that he believed it was reasonable to relate the onset of the seizures to the 1974 injury. In addition, petitioner and his wife testified that petitioner never suffered a seizure of any kind prior to the 1974 accident. In view of this testimony, respondent's contention that the seizures were not the result of the 1974 accident is without merit.

Respondent's final contention is that since the parties arrived at an oral settlement, the Release Act of New Mexico does not apply and the oral settlement should be enforced. In order for an attorney to bind a client to a settlement agreement, he must have specific authority to do so, unless there is an emergency or some overriding reason for enforcing the settlement despite the attorney's lack of specific authority. *Augustus v. John Williams & Associates, Inc.,* 92 N.M. 437, 589 P.2d 1028 (1979).

In this case the evidence indicates that petitioner's attorney did not have specific authority to settle the case for him. At the motion hearing both petitioner and his wife

testified unequivocally that they had not authorized their original counsel to settle the case and that they had refused to sign the agreement because they felt it was not a fair one. The record does not show that there is an overriding reason which would permit enforcement of the alleged settlement without the necessary authority. The proposed oral settlement was arrived at between counsel on November 15, 1976. Prior to that date petitioner's original counsel was having difficulty evaluating the case for his client, despite the availability of some medical evidence supporting petitioner's case. Petitioner and his wife were reluctant to accept the proposed settlement. They felt the offer was insufficient, considering the extent of the injury. It was agreed that petitioner would seek the advice of another attorney. On January 12, 1977, respondent filed a motion to enforce the alleged settlement agreement. Original counsel withdrew on February 17, 1977, and new counsel entered an appearance, filed a verified response to respondent's motion and recommended that petitioner refuse the settlement offer.

No judgment had been entered by the trial court based upon the oral settlement, no order of dismissal had been entered by the trial court, and no dismissal had been filed by the parties to the oral agreement under Rule 41. Based upon the record in this case, there was no enforceable oral agreement and § 41–1–1C applies.

Section 41–1–1C specifically requires that a settlement be acknowledged by the injured person before a disinterested notary public. This provision was construed in *Mitschelen v. State Farm Mut. Auto. Ins. Co.,* 89 N.M. 586, 555 P.2d 707 (Ct.App. 1976), *cert. denied,* 90 N.M. 9, 558 P.2d 621 (1976). In *Mitschelen* the Court of Appeals held that a release with respect to bodily injury claims prepared by the insurer and signed without acknowledgment by the claimant while under a doctor's care was invalid. The court stated:

> Section 21–11–1(C) [now 41–1–1C, NMSA 1978] expressly provides that there be an acknowledgment before a

notary public. Under this provision, we hold that the acknowledgment is a part of the release, and it is necessary to its validity.

*Id.* 89 N.M. at 589, 555 P.2d at 710. The rationale in *Mitschelen* applies with equal force to the particular facts and circumstances in this case. The acknowledgment must be a part of the "Settlement Agreement." Without a writing and acknowledgment the settlement agreement in this case is void. This rule is limited to cases arising under the provisions of the Release Act of New Mexico.

The Court of Appeals is reversed, the trial court's judgment enforcing the settlement is vacated, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

IT IS SO ORDERED.

SOSA, C. J., EASLEY and PAYNE, JJ., and McMANUS, Senior Justice, concur.