692 P.2d 1343

**Barry GONZALES, Plaintiff-Appellant,**

**v.**

**James Dwight ATNIP and John David Hodges, Defendants-Appellees.**

**No. 7826.**

Court of Appeals of New Mexico.

Nov. 29, 1984.

Certiorari Denied Jan. 9, 1985.

Anthony F. Avallone, Law Systems of Las Cruces, P.A., Las Cruces, for plaintiff-appellant.

Jerald A. Valentine, Las Cruces, for defendants-appellees.

## OPINION

WOOD, Judge.

The historical and current public policy of this state is to favor the settlement of disputed claims. *Ratzlaff v. Seven Bar Flying Service, Inc.*, 98 N.M. 159, 646 P.2d 586 (Ct.App.1982). This policy applies to the settlement of lawsuits. *Jones v. United Minerals Corp.*, 93 N.M. 706, 604 P.2d 1240 (1979); *Bogle v. Potter*, 68 N.M. 239, 360 P.2d 650 (1961); *Esquibel v. Brown Construction Co.*, 85 N.M. 487, 513 P.2d 1269 (Ct.App.1973). The settlement of a lawsuit will be enforced by the courts. *Jones*. A party seeking relief from such a settlement has the burden of persuasion. *Marrujo v. Chavez*, 77 N.M. 595, 426 P.2d 199 (1967).

Plaintiff (Gonzales) filed this lawsuit seeking damages for personal injuries allegedly sustained in an automobile accident. The parties orally settled the lawsuit. Gonzales reneged, refusing to carry out the settlement. Defendants moved that the settlement be enforced. Gonzales contended the settlement could not be enforced because of the Release Act, NMSA 1978, Sections 41-1-1 and -2 (Repl.Pamp. 1982). The trial court ordered Gonzales to

comply with his settlement. Gonzales appeals. The question is whether noncompliance with the Release Act bars application of the public policy and prevents settlement of this lawsuit. We hold that the Release Act does not apply. We (a) state the background facts; (b) identify items not used in deciding the appeal; and (c) state the basis for our decision.

**Background**

The accident occurred in January 1981. Gonzales, the driver, and Castro, a passenger, sued. Castro's complaint was filed in July 1982, Gonzales' in September 1982. The cases were consolidated for trial, which was scheduled to begin February 6, 1984. An oral agreement of settlement was reached on January 19, 1984. The settlement provided that each plaintiff was to receive $32,500 and was on the condition that both plaintiffs settled all claims against defendants based on the accident. The trial setting and the depositions of two physicians were vacated because of the settlement.

Gonzales' attorney was the person who agreed to the settlement with defendants. The attorney's agreement to the settlement was conveyed to defendants only after a conference among Gonzales, Castro and their respective attorneys. There is no issue in this case concerning Gonzales' assent to the settlement or concerning his attorney's specific authority to settle. *Augustus v. John Williams & Associates, Inc.*, 92 N.M. 437, 589 P.2d 1028 (1979). There is no issue in this case involving fraud, misrepresentation, overreaching of authority or mutual mistake. *See Garcia v. Middle Rio Grande Conservancy District*, 99 N.M. 802, 664 P.2d 1000 (Ct.App. 1983). There is no claim that a settlement of a lawsuit is unenforceable if the settlement is oral. *See Augustus* and *Esquibel.*

In seeking to meet his burden of persuading the trial court that the settlement should not be enforced, Gonzales relies solely on the Release Act.

Section 41–1–1 provides:

A. No person whose interest is or may become adverse to a person injured who is either under the care of a person licensed to practice the healing arts, or confined to a hospital or sanitarium as a patient shall, within fifteen days from the date of the occurrence causing the person's injury:

(1) negotiate or attempt to negotiate a settlement with the injured patient; or

(2) obtain or attempt to obtain a general release of liability from the injured patient; or

(3) obtain or attempt to obtain any statement, either written or oral[,] from the injured patient for use in negotiating a settlement or obtaining a release.

B. Any settlement agreement entered into, any general release of liability or any written statement made by any person who is under the care of a person licensed to practice the healing arts or is confined in a hospital or sanitarium after he incurs a personal injury, which is not obtained in accordance with the provisions of Section 2 [41–1–2 NMSA 1978] of this act, requiring notice and acknowledgment, may be disavowed by the injured person within fifteen days after his discharge from the care of the persons licensed to practice the healing arts or his release from the hospital or sanitarium, whichever occurs first, and such statement, release or settlement shall not be evidential in any court action relating to the injury.

C. Any settlement agreement, any release of liability or any written statement shall be void unless it is acknowledged by the injured party before a notary public who has no interest adverse to the injured person.

Section 41–1–2 states a procedure for effecting a settlement with a person coming within the provisions of Section 41–1–1(B).

Gonzales testified, at the hearing on the motion to enforce the settlement, that he changed his mind about the settlement be-

cause "I didn't realize that I still had to be under the doctor's care" and "I just made a mistake." Gonzales' reliance on the Release Act involves being under the care of a physician, Section 41–1–1(B), the failure to follow the procedures of Section 41–1–2, and the failure of the settlement to be acknowledged by Gonzales before a notary public, Section 41–1–1(C).

The trial court ruled:

In this case the oral settlement was made after the controversy had been pending in court for almost a year and a half, and after extensive pre-trial discovery. The plaintiff Gonzales was represented by competent counsel. The oral settlement was not in the nature of a rush release, nor was such the subject of an oppressive practice, which are the acts prohibited by the Release Act * * *. To deny enforcement might prejudice the settlement made by the co-plaintiff Castro since the offer was to pay a total of $65,000.00, i.e., $32,500.00 each on condition that such would settle all matters in controversy with both parties. * * *

* * * [T]he facts in this proceeding are such that the statute is not applicable. The oral settlement agreement was made by the attorney for Gonzales, with his express authorization, and such was within the scope of his duties in representing his client in this proceeding, and the agreement is enforceable.

The trial court was of the view that its ruling was in accordance with, and not contrary to, *Bolles v. Smith*, 92 N.M. 524, 591 P.2d 278 (1979).

**Items Not Used**

In considering the impact of the Release Act upon Gonzales' settlement, the following items have not been considered.

(a) Do subparagraphs B and C of Section 41–1–1 have independent effect or do they depend upon subparagraph A of Section 41–1–1? This issue has not been expressly decided. *Bolles* and *Mitschelen v. State Farm Mutual Automobile Insurance Co.,* 89 N.M. 586, 555 P.2d 707 (Ct.App.1976), suggest that subparagraphs B and C have independent effect. We assume that subparagraphs B and C have independent effect and, thus, we do not consider the interrelationship of the subparagraphs in Section 41–1–1. The assumption is pertinent because subparagraph A is not involved in this case.

(b) Subparagraphs B and C of Section 41–1–1 refer to both settlement agreements and releases of liability. The terms are not necessarily synonymous. *See Burton v. Jennings Brothers*, 88 N.M. 95, 537 P.2d 703 (Ct.App.1975); *Financial Indemnity Co. v. Bevans*, 38 Or.App. 369, 590 P.2d 276 (1979). Inasmuch as the statute refers to settlement agreements, and this case involves a settlement agreement, we do not consider any distinction between a settlement and a release.

(c) Sections 41–1–1(B) and 41–1–2 refer to one who is under the care of a person licensed to practice the healing arts. Gonzales testified he "had to be under the doctor's care." We assume, but do not decide, that this sparse testimony was sufficient to infer that the doctor's care was provided in good faith, was reasonably required, and was being provided at the time of the oral settlement or within the time for disavowal of a settlement. *See Bolles* and Section 41–1–1(B). Thus, we assume there was a factual basis for Gonzales' reliance on Sections 41–1–1(B) and 41–1–2.

(d) There are facts raising questions as to equity or "fairness." Gonzales settled. Deposition settings and the trial setting were vacated on the strength of the settlement. Should Gonzales' attempt to renege be successful, what is the impact on defendants' opportunity to dispose of this case by trial at the scheduled time? The settlement was conditioned on both plaintiffs settling their claims. Should Gonzales' attempt to renege be successful, it would deprive Castro of his settlement; Castro wants to retain his settlement. We have not considered these matters in reaching our decision.

**198**

## Basis for Decision

This appeal involves the impact of the Release Act upon the settlement of a lawsuit. Three of the four New Mexico appellate decisions which discuss the Release Act did not involve this impact. In *Ratzlaff, Catalano v. Lewis*, 90 N.M. 215, 561 P.2d 488 (Ct.App.1977), and *Mitschelen*, the release was signed *before* there was a lawsuit concerning the injuries involved. *Ratzlaff* states: "Releases, being contractual in nature, are governed by the laws of contracts generally, as well as any specific legislative acts prescribing the manner by which such agreements may be validated." 98 N.M. at 162, 646 P.2d 586. We are not concerned with legislative requirements for a valid release where there is no litigation. The *Ratzlaff* statement is not controlling because it did not consider the issue we must decide. That issue is whether the Release Act operates to invalidate the settlement of a lawsuit.

Although the opinion in *Bolles* does not specifically state that the purported settlement in that case occurred after the lawsuit was filed, that was in fact the posture of that case. Thus, the meaning of *Bolles* is necessarily involved in our decision. Counsel for both parties informed us at oral argument that neither the "Release" statutes nor the decisions involving those statutes in other jurisdictions provide assistance in resolving the impact issue. Our research also indicates that decisions of other jurisdictions involving release statutes are not helpful in resolving the issue of our Release Act upon the settlement of a lawsuit.

Before discussing *Bolles*, we consider the purpose of the Release Act and the extent of the legislative intent in enacting the Release Act.

*Ratzlaff* states that the Release Act "evinces a clear legislative purpose to prevent injustice to an injured claimant in the execution of releases while he is hospitalized or under the care of a doctor." 98 N.M. at 163, 646 P.2d 586. *Mitschelen* comments that the Release Act was directed to "rush releases" because of the great possibility for error in such a release. *Mitschelen* also indicates that the purpose of the Release Act was to require fairness and avoid oppressive practices in reaching a settlement. There is no claim that the settlement in this case was rushed; the elapsed time shows otherwise. There is no claim that an oppressive practice was involved in reaching the settlement or that the settlement was unfair to Gonzales. There is no claim of any injustice in this settlement. The settlement in this case does not thwart the purposes of the Release Act.

Gonzales' position is that it makes no difference whether the purposes of the Release Act are involved and that those purposes are not pertinent. He points out that subparagraphs B and C of Section 41–1–1 refer to "any" settlement agreement, and a meaning of "any" is "all." *O'Brien v. Middle Rio Grande Conservancy District*, 94 N.M. 562, 613 P.2d 432 (Ct.App.1980). Gonzales reminds us that a statute is to be given effect as written, and that a decision excluding some settlement agreements from the Release Act would be contrary to the legislative use of "any." This argument is facile because it fails to consider that it leads directly to a constitutional problem.

■ The constitutional issue would be whether the Release Act attempts to regulate either practice or procedure in the courts. Such would be a violation of the power reserved to the judiciary by the constitution. *See Ammerman v. Hubbard Broadcasting, Inc.*, 89 N.M. 307, 551 P.2d 1354 (1976).

■ "Trial courts have supervisory control over their dockets." *Birdo v. Rodriguez*, 84 N.M. 207, 210, 501 P.2d 195 (1972). "Trial courts have inherent power to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Miller v. City of Albuquerque*, 88 N.M. 324, 329, 540 P.2d 254 (Ct.

App.1975). To allow Gonzales to renege on an otherwise valid settlement after the trial setting has been vacated would affect the trial court's docket control. Even without a trial setting, if Gonzales may renege, the trial court's power to achieve an orderly and expeditious disposition of cases would be affected. The public policy expressed in our decisions favoring the settlement of lawsuits would also be affected if the Release Act applies to "any" settlement of personal injury claims. Gonzales' argument clearly implicates "practice" in the courts.

NMSA 1978, Civ.P. Rule 41(a)(1) (Repl. Pamp.1980) states: "Subject to the provisions of Rule 23(e) and of any statute, an action may be dismissed by the plaintiff without order of the court * * *." NMSA 1978, Civ.P. Rule 23(e) (Repl.Pamp. 1980) is not applicable; it pertains to the dismissal of class actions. The only statute involved is the Release Act and it does not prevent an injured party from dismissing his lawsuit. Could a plaintiff, who has dismissed his lawsuit under Civ.P. Rule 41(a)(1), avoid the effect of that dismissal on the basis that the dismissal resulted from a settlement subsequently disavowed under the Release Act?

In addition, Section 41-1-2 states a procedure for obtaining a release from a person coming within Section 41-1-1(B). In turn, Section 41-1-1(B) states that a release not in accordance with Section 41-1-2 "shall not be evidential in any court action relating to the injury." Gonzales' argument clearly implicates "procedure" in the courts.

▪ Any legislative scheme which would "control or exercise the inherent powers of the judiciary would be violative of Article III and Article VI, Section 1 of the New Mexico Constitution." *Mowrer v. Rusk*, 95 N.M. 48, 53, 618 P.2d 886 (1980). Of course "[i]t is to be presumed that the Legislature, in enacting the statute, has performed its duty of keeping within constitutional bounds." *State ex rel. Hannah v. Armijo*, 38 N.M. 73, 80, 28 P.2d 511 (1933). "Where statutes may be construed in alternate ways one of which would result in the statutes being constitutional and the other being unconstitutional the former construction will be applied." *State ex rel. Norvell v. Credit Bureau of Albuquerque, Inc.*, 85 N.M. 521, 529, 514 P.2d 40 (1973).

In this case the constitutionality of the Release Act has not been directly raised. The constitutional issue arises indirectly as a result of Gonzales' argument that there is no limitation on the reach of the Release Act and that the Act applies to the settlement of lawsuits. We have discussed the constitutional issue, not to decide it, but to show that the issue is a substantial one. We doubt that the legislature intended to hazard the loss of the beneficent purpose of the Release Act by requiring compliance with the Act in order to settle a personal injury lawsuit.

With this background—no purpose of the Release Act is thwarted by enforcement of the settlement in this case and our doubt that the Release Act is constitutional if the settlement of a personal injury lawsuit is subject to the act—we consider the meaning of *Bolles v. Smith*. Both parties assert that *Bolles* supports their position. The arguments of counsel are to the effect that *Bolles* is ambiguous. We must decide what *Bolles* means.

Gonzales points out that *Bolles* was a case involving the settlement of a lawsuit, and the opinion held that the Release Act applied. Defendants point out that *Bolles* discusses an attorney's authority to settle if the attorney has specific authority to do so. Defendants assert that *Bolles* holds that the Release Act does not apply to such a settlement. Neither view is complete.

The published opinion in *Bolles* was substituted for a prior withdrawn opinion. Both the supreme court and this court have examined withdrawn opinions for assistance in resolving issues. *See Stang v. Hertz Corp.*, 81 N.M. 69, 463 P.2d 45 (Ct.

App.1969), *aff'd* 81 N.M. 348, 467 P.2d 14 (1970); *City of Artesia v. Carter,* 94 N.M. 311, 610 P.2d 198 (Ct.App.1980). We do so in this case.

The prior withdrawn opinion states: "The issue * * * is whether the oral settlement agreement entered into * * * by appellant's attorney on behalf of appellant, but later rejected by appellant before approval of the settlement by the court, can be enforced. We hold that it cannot. The Release Act * * * prohibits settlement * * unless certain conditions are met." The withdrawn opinion goes on to hold that the requirements of the Release Act had not been met.

The published opinion states that the prior opinion was withdrawn because "it was deemed necessary to add language to restrict the application of the rule of law announced to cases arising under [Section] 41–1–1 * * * and to the specific facts in this case." 92 N.M. at 525, 591 P.2d 278. Counsel recognize a restriction on the application of the Release Act was intended; they are uncertain as to the extent of the restriction.

Both *Bolles* opinions answer the argument that there is no limitation on the application of the Release Act to the settlement of personal injury lawsuits. The Act does not apply if the trial court has entered judgment on the basis of an oral settlement or if the trial court has dismissed the lawsuit on the basis of a settlement. The published opinion states another limitation. It is that the Act does not apply if a "dismissal had been filed by the parties to the oral agreement under Rule 41 [Civ.P.R. 41]." 92 N.M. at 527, 591 P.2d 278. This last stated limitation avoids a conflict between the Release Act and Civ.P. Rule 41.

The limitations stated in the preceding paragraph are pertinent in that they establish that limitations do exist. However, those specific limitations are not applicable in this case. There had been no judgment, no court-ordered dismissal, and no dismissal by stipulation of the parties. Gonzales reneged before any of these occurred.

The settlement on behalf of Gonzales was by his attorney; it is undisputed that the attorney had specific authority to do so. Our reading of the published opinion in *Bolles* is that a settlement of a lawsuit by an attorney with specific authority to settle is binding on the client. Thus, the settlement in this case is binding on Gonzales. This holding disposes of this appeal.

Our holding does not, however, dispose of two problems. First, if a personal injury claimant's attorney has specific settling authority, but no lawsuit has been filed, does the attorney's settlement bind the client? Inasmuch as *Bolles* involved the settlement of a lawsuit, does *Bolles* speak to this at all? Second, *Bolles* held that the attorney in that case lacked specific settling authority and seems to indicate that in the absence of specific settling authority, the Release Act applies. How would the Release Act be applicable to a non-settlement? Inasmuch as a resolution of these problems is unnecessary to dispose of this appeal, they are not decided in this opinion.

The problems with the Release Act identified herein were fairly raised by this appeal. They emphasize uncertainty as to the legislative intent. In enacting the Release Act, did the legislature intend to regulate the disposition of lawsuits or an attorney's specific settling authority? Legislative clarification would be helpful to litigants, attorneys and judges; a clarification might save both time and money. We urge the legislature to clarify its intent.

The order of the trial court is affirmed. Gonzales is to bear the appellate costs.

**IT IS SO ORDERED.**

BIVINS and MINZNER, JJ., concur.