646 P.2d 586

**Phillip L. RATZLAFF,
Plaintiff-Appellant,**

v.

**SEVEN BAR FLYING SERVICE, INC. and The Hartford Insurance Company, Defendants-Appellees.**

**No. 5314.**

Court of Appeals of New Mexico.

April 8, 1982.

Certiorari Denied June 7, 1982.

Patrick H. Kennedy, Albuquerque, for plaintiff-appellant.

Janet Santillanes, Klecan, Roach & Santillanes, Albuquerque, for defendants-appellees.

## OPINION

DONNELLY, Judge.

Plaintiff appeals from a judgment of the trial court, which denied his claim for workmen's compensation benefits on the grounds of a valid written release. We affirm.

On appeal, plaintiff raises two issues: (1) the trial court erred in determining that Minnesota law governed the efficacy of the release; and (2) the release was invalid under New Mexico law.

We discuss both points jointly.

The essential facts are largely undisputed. Plaintiff was employed by defendant Seven Bar Flying Service as an aircraft mechanic, and on July 18, 1978, he injured his left knee in a work-related accident. Approximately one and one-half months later, plaintiff consulted his family doctor, who referred him to Dr. Keith D. Harvie, an osteopathic surgeon. Plaintiff underwent surgery by Dr. Harvie in Albuquerque in November, 1978, for torn cartilage. After a recuperation period, plaintiff was released by Dr. Harvie for light duty work on January 30, 1979, and plaintiff returned to work on a part-time basis.

In March of 1979, plaintiff resigned his job with Seven Bar Flying Service, and moved his wife and family to Minnesota. Prior to leaving New Mexico, plaintiff checked with Dr. Harvie, who recommended he see an orthopedic specialist when he was settled in Minnesota. Plaintiff also notified a claims representative for Hartford Insurance Company (Hartford), concerning his planned move and was advised that compensation benefits would be forwarded to his new address.

Shortly after plaintiff's arrival in Minnesota, Hartford's adjuster received a medical report from Dr. Harvie stating that plaintiff would be able to return to full-time work within a few weeks. Acting upon the medical report, Hartford terminated all compensation benefits to plaintiff.

Plaintiff complained to Hartford about the stopping of payments, but to no avail. Plaintiff consulted Dr. Weis, a physician in Minnesota, concerning his medical problems. Dr. Weis prescribed medication, recommended exercises, and arranged for him to receive physical therapy.

Defendants secured an adjuster in Minnesota, who contacted plaintiff and began discussions concerning settlement of his claim. Defendants also received a report from Dr. Weis, dated April 19, 1979, estimating a 15% impairment to the knee and indicating that plaintiff could return to his normal work activity. Defendants offered to settle the claim for a lump sum, based on his impairment. After negotiations with the Hartford adjuster, plaintiff agreed to settle his claim for $3,880.35, if Hartford would also pay all of his outstanding medical bills. Defendants sent plaintiff a release based on this settlement on April 25, 1979 to sign, which he signed before a notary public in Minnesota on June 7, 1979.

The release that plaintiff signed stated that the lump-sum payment of $3,880.35, together with medical and prior payments made to plaintiff, constituted a total of $8,932.24, and was "in full settlement" of plaintiff's workmen's compensation claim. The release also provided that plaintiff forever released defendants from any claim for injury and from any responsibility for medical treatment which he suffered in the past or may suffer in the future.

After signing the release, plaintiff mailed it to defendants, who then sent plaintiff a check for $3,888.35. Upon receipt, plaintiff cashed the check. Thereafter, plaintiff still suffered problems with his injured knee.

Plaintiff returned to New Mexico and filed a workmen's compensation claim in

Bernalillo County in June, 1980. Defendants, pursuant to N.M.R.Civ.P. 8(c), N.M.S.A.1978 (Repl.1980), pled the release as an affirmative defense in their answer. On motion of defendants, the court bifurcated the trial and, in the initial phase, heard only evidence concerning the validity of the release. Following the first portion of the bifurcated trial, the court adopted findings of fact and conclusions of law and entered judgment for defendants. The court determined that plaintiff was a resident of Minnesota, that the law of that state governed the release, and that the document constituted a valid binding contract barring plaintiff's claim.

Plaintiff challenges the court's findings and conclusions that Minnesota, and not New Mexico law, determines the validity of the release, and argues that the New Mexico Release Act, §§ 41–1–1 to –1–2, N.M.S.A.1978, and Workmen's Compensation Act, §§ 52–1–1 to –3–59, N.M.S.A.1978, are controlling. Plaintiff also asserts that the release was invalid due to fraud, lack of consideration, and mutual mistake under New Mexico law.

As found by the trial court, plaintiff received the release in Minnesota and signed it in that state while he was a legal resident of that jurisdiction. The trial court found that the last act forming the contract was performed in Minnesota and that the agreement was, therefore, subject to the contract law of that state.

New Mexico still adheres to traditional conflicts of law analysis, and has not adopted the Restatement (Second) of Conflict of Laws (1971), approach which focuses on which state has the maximum interests in the litigation. *See First National Bank in Albuquerque v. Benson*, 89 N.M. 481, 553 P.2d 1288 (Ct.App.) (Hernandez, J., Dissenting); *cert. denied*, 90 N.M. 7, 558 P.2d 619 (1976).

■ Under a traditional conflict of law approach, we must first determine under what area of law the dispute arises. Releases, being contractual in nature, are governed by the laws of contracts generally, as well as any specific legislative acts prescribing the manner by which such agreements may be validated. *See Rocky Mountain Association of Credit Management v. Hessler Manufacturing Co.*, 37 Colo.App. 551, 553 P.2d 840 (1976); *Financial Indemnity Co. v. Bevans*, 38 Or.App. 369, 590 P.2d 276 (1979); *Bruns v. Light*, 74 S.D. 418, 54 N.W.2d 99 (1952); *Julian v. Zayre Corp.*, 388 A.2d 813 (R.I.1978); *Maxwell's Electric, Inc. v. Hegeman-Harris Co. of Canada, Ltd.*, 18 Wash.App. 358, 567 P.2d 1149 (1977).

■ The law is well-settled that the courts of this state will determine the validity of a contract according to the substantive laws of the state where the contract was formed, unless such a construction conflicts with the settled policy of New Mexico. *Sandoval v. Valdez*, 91 N.M. 705, 580 P.2d 131 (Ct.App.), *cert. denied*, 91 N.M. 610, 577 P.2d 1256 (1978); *Matter of Estate of Voight*, 95 N.M. 625, 624 P.2d 1022 (Ct.App.), *cert. denied*, 95 N.M. 669, 625 P.2d 1186 (1981). It is undisputed that the contract was executed in Minnesota. Therefore, Minnesota law applies, unless there is a policy reason for applying New Mexico law.

The thrust of plaintiff's argument is that the New Mexico Release Act, § 41–1–1 to –1–2, *supra*, is founded upon public policy factors that mandate its application, rather than the law of Minnesota, to the giving of releases. Minnesota has no such release act. Our act authorizes an injured claimant to invalidate a release within a prescribed time period where the releasor is under medical care or confined to a hospital or a sanitarium. Arguing that he was under ongoing medical care at the time of his signing the release, plaintiff contends that the release, if tested under New Mexico law, was voidable.

Plaintiff further argues that the combined policies of the Release Act and the New Mexico Workmen's Compensation Act require application of New Mexico contract law, rather than foreign law, to a release of a New Mexico workmen's compensation claim.

Defendants assert that there was no impropriety in securing the release from plaintiff, that he held and considered the release for over a month before signing it, and that enforcement of the release is not inimicable to the public policy of New Mexico, citing *Forrest Currell Lumber Co. v. Thomas*, 81 N.M. 161, 464 P.2d 891 (1970); *Ingalls v. Perkins*, 33 N.M. 269, 263 P. 761 (1927).

In Minnesota, a release of a workmen's compensation claim that is subject to suit in that state must be approved by the State Workmen's Compensation Commission. Minn.Stat.Ann. 176.521 (1980). Minnesota's general law governing releases recognizes the validity of releases where they are fairly entered into, reflect a meeting of the minds, and are supported by valid consideration. *See Olson v. Ruglowski*, 277 N.W.2d 385 (Minn.1979); *Barilla v. Clapshaw*, 306 Minn. 437, 237 N.W.2d 830 (1976); *Jeffries v. Gillitzer*, 302 Minn. 402, 225 N.W.2d 17 (1975); *Tupper v. Massachusetts Bonding and Insurance Co.*, 156 Minn. 65, 194 N.W. 99 (1923).

■ In our examination of this state's public policy relative to the law of releases, we must also bear in mind that the policy of our law is to favor amicable settlement of claims without litigation when the agreements are fairly secured, are without fraud, misrepresentation, or overreaching, and when they are supported by consideration. *Esquibel v. Brown Construction Co.*, 85 N.M. 487, 513 P.2d 1269 (Ct.App.), *cert. denied*, 85 N.M. 483, 513 P.2d 1265 (1973); *see also Knippel v. Northern Communications Inc.*, 21 N.M.St.B.Bull. 258 (1982).

■ Nevertheless, the New Mexico Release Act, § 41–1–1, *supra*, evinces a clear legislative purpose to prevent injustice to an injured claimant in the execution of releases while he is hospitalized or under the care of a doctor. *Mitschelen v. State Farm Mutual Insurance Co.*, 89 N.M. 586, 555 P.2d 707 (Ct.App.), *cert. denied*, 90 N.M. 9, 558 P.2d 621 (1976). The policies behind the New Mexico Workmen's Compensation Act are remedial—the interests of the claimant and the public are paramount and

the act is to be construed liberally in favor of the workmen, so they will not be forced to rely on welfare. *Codling v. Aztec Well Servicing Co.*, 89 N.M. 213, 549 P.2d 628 (Ct.App.1976). In construing a release of workmen's compensation claims, reasonable doubts as to the release's validity are to be decided in favor of the worker. *Ruiz v. City of Albuquerque*, 91 N.M. 526, 577 P.2d 424 (Ct.App.), *cert. denied*, 91 N.M. 491, 576 P.2d 297 (1978).

■ In this case the plaintiff signed a release for a workmen's compensation claim that arose entirely out of New Mexico circumstances. The plaintiff was then a New Mexico resident, working in New Mexico, and was injured in New Mexico. His initial treatment was also in New Mexico. To allow Minnesota law to govern the release of plaintiff's rights would conceivably deny plaintiff some of the important protections guaranteed by the two acts in question. The policies of protection underlying the two acts require that New Mexico law be applied to the workmen's compensation claim release in this case.

Although the trial court erred in applying Minnesota law, it correctly concluded that the release executed by the plaintiff was valid. The New Mexico Release Act, § 41–1–1, *supra*, does not render the release voidable under the facts of this case, and the trial court's conclusions otherwise upholding the validity of the release are, under this state's or the similar Minnesota law, supported by valid findings of fact.

■ The New Mexico Release Act, at § 41–1–1(B), provides in applicable part:

B. *Any settlement agreement entered into, any general release of liability or any written statement* made by any person who is under the care of a person licensed to practice the healing arts or is confined in a hospital * * * after he incurs a personal injury, which is not obtained in accordance with * * * this act, requiring notice and acknowledgment, *may be disavowed by the injured*

*person within fifteen days after his discharge from the care of the persons licensed to practice the healing arts or his release from the hospital or sanitarium, whichever occurs first, \* \* \**. [Emphasis added.]

Under § 41–1–1, plaintiff has not shown that he made a timely repudiation of the release signed by him. Plaintiff's own testimony indicated that he was hospitalized in November, 1978, for an operation on his knee. He was released from the hospital the same month. Plaintiff left New Mexico and discontinued treatment with Dr. Harvie. In Minnesota, he sought treatment from Dr. Weis. Dr. Weis wrote to defendants on April 19, 1979, that despite a 15% loss of function of plaintiff's left knee, he saw no basis for plaintiff's "continued inability to function, and \* \* \* that he should be encouraged to progress to his normal working activity as soon as possible. Plaintiff last saw Dr. Weis in April, 1979, and signed the release on June 7, 1979. Plaintiff first attempted to disavow the release over a year after last seeing a doctor, when on June 5, 1980, he filed suit. Plaintiff presented no medical evidence confirming that he was still under the care of a doctor or had timely disavowed the release signed by him.

█ As regards plaintiff's arguments that the release is invalid on other grounds, the trial court expressly found that no misrepresentations were made by defendants, that there was no mutual mistake, fraud or improper conduct in connection with their obtaining the release, and that the release was supported by adequate consideration. These findings were not challenged by plaintiff on appeal as required under N.M. R.Civ.App.P. 9(d), N.M.S.A.1978. Moreover, the court's findings and conclusions were supported by substantial evidence under New Mexico law. Where, as here, substantial evidence exists to support the decision of the trial judge, the findings will not be disturbed upon appeal. *Jones v. United Minerals Corp.*, 93 N.M. 706, 604 P.2d 1240

(1979); *Webb v. Arizona Public Service Co.*, 95 N.M. 603, 624 P.2d 545 (Ct.App.1981).

█ Plaintiff's argument that the release was not supported by adequate consideration overlooks the fact that inadequacy of consideration is not sufficient to avoid a contract in the absence of fraud. *McCasland v. Prather*, 92 N.M. 192, 585 P.2d 336 (Ct.App.1978). Although payment of a liquidated, undisputed, matured obligation will not constitute consideration for a release of further obligations, the lump-sum disbursement by the insurer in consideration for the plaintiff's release in this case was not such a payment. *See Thomas v. Barber's Super Markets, Inc.*, 74 N.M. 720, 398 P.2d 51 (1964).

█ Plaintiff also argues that the release should be set aside on grounds of fraud or mutual mistake because he never consulted with an attorney, had his legal rights explained or misrepresented to him, concerning his claim, and the release was never submitted for approval by a court or other impartial authority. The practice of providing a claimant with independent counsel incident to the negotiation of workmen's compensation releases in order to assure the workman fully comprehends his rights and the terms of any settlement, and having settlements approved by the district court, is highly commended. However, omission of these safeguards and mistake or misunderstanding of the law that affects the subject matter of the compromise will not, without a showing of other good cause, invalidate an otherwise valid release and settlement agreement. *See Esquibel v. Brown Construction Co., supra*; § 52–1–54(B), N.M.S.A.1978.

█ Plaintiff also challenges the sufficiency of the evidence to support the trial court's finding that he was a resident of Minnesota. Plaintiff's complaint alleged that after his injury, he moved to Minnesota. Our examination of the testimony and evidence, when viewed in a light most fa-

vorable to defendants, supports the trial court's finding. *Den-Gar Enterprises v. Romero*, 94 N.M. 425, 611 P.2d 1119 (Ct. App.), *cert. denied*, 94 N.M. 628, 614 P.2d 545 (1980). Under any circumstances, the finding was not necessary to the ultimate conclusions adopted by the trial court regarding the validity of the release. Findings not necessary to support the trial court's ultimate decision may be disregarded. *Mathieson v. Hubler*, 92 N.M. 381, 588 P.2d 1056 (Ct.App.), *cert. denied*, 92 N.M. 353, 588 P.2d 554 (1978); *see Renfro v. J. D.*

*Coggins Co.*, 71 N.M. 310, 378 P.2d 130 (1963).

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

HENDLEY and LOPEZ, JJ., concur.