1999-NMCA-038

977 P.2d 348

**David G. RAMIREZ, Worker–Appellant,**

v.

**JOHNNY'S ROOFING, INC. and U.S.F. & G., Employer/Insurer–Appellee.**

No. 19254.

Court of Appeals of New Mexico.

Jan. 11, 1999.

Max Houston Proctor, Hobbs, for Appellant.

Thomas R. Mack, H. Brook Laskey, Miller, Stratvert & Torgerson, P.A., Albuquerque, for Appellee.

*OPINION*

ARMIJO, Judge.

{1} David G. Ramirez (Worker) appeals the adverse administrative disposal of his workers' compensation claim. His appeal presents three issues: (1) whether Johnny's Roofing, Inc., and U.S.F. & G. (collectively, Employer) waived their statutory right to redesignate Worker's primary health care provider by entering into a partial lump-sum settlement agreement with Worker; (2) whether Worker waived his right to raise the first issue by failing to file an objection to Employer's notice of change of health care provider; and (3) whether Worker's back surgery was reasonable and medically necessary such that Employer must pay for it. For the reasons stated below, we reverse and remand the order of the Workers' Compensation Judge (WCJ).

## BACKGROUND

{2} Worker injured his back while working in October 1992. For treatment, he elected Dr. Robert Peinert, a physician with whom he had consulted on prior occasions. Dr. Peinert determined that Worker had reached maximum medical improvement (MMI) in October 1993 and authorized his return to work, albeit in a limited capacity.

{3} In September 1994, the parties settled a portion of Worker's claims against Employer. The agreement provided that Employer would pay Worker $10,000 in consideration for Worker's partial release of Employer from liability. The agreement further provided: "Medical treatment to remain open for life with Dr. Peinert or his referral."

{4} After reaching MMI, Worker continued to see Dr. Peinert regarding chronic back pain. Due to Worker's reticence regarding surgical intervention, Dr. Peinert prescribed a conservative treatment plan which failed to lessen Worker's apparent discomfort. In November 1995, Worker consented to Dr. Peinert's surgical recommendations, and the doctor planned to operate in "early February" of the next year. The surgery, however, was postponed until an Employer-ordered second opinion could be rendered and further tests could be performed. Once these consultations and tests were complete, Dr. Peinert scheduled Worker's surgery for June 1997.

{5} Until spring of 1997, Employer consistently paid for Dr. Peinert's treatment of Worker; indeed, there is no record evidence that Employer was dissatisfied with Dr. Peinert's treatment of Worker. Nonetheless, in May 1997, Employer filed a notice of change of health care provider, informing Worker that Dr. Peinert was no longer his treating physician. Worker and Dr. Peinert disregarded this notice and proceeded with the planned back surgery. Relying upon the May 1997 change of Worker's health care provider, Employer has since refused to pay for the operation. At the hearing below, the WCJ decided in Employer's favor, finding it not liable for the costs of Worker's operation and follow-up treatment.

## THE PARTIAL LUMP–SUM SETTLEMENT

{6} NMSA 1978, Section 52–5–12(C) (1990) provides for the partial lump-sum settlement of workers' compensation claims. Such agreements allow workers at MMI to receive a portion of the benefits to which they are entitled in exchange for their releasing their employers from liability for making biweekly payments for a period of time. *Accord Cabazos v. Calloway Constr.,* 118 N.M. 198, 201, 879 P.2d 1217, 1220 (Ct. App.1994). Once reached, these agreements bind the parties in contract. *See Ratzlaff v. Seven Bar Flying Serv., Inc.,* 98 N.M. 159, 162, 646 P.2d 586, 589 (Ct.App.1982) ("Releases, being contractual in nature, are governed by the laws of contracts[.]"). Indeed, once approved by a WCJ, they "shall not be set aside or modified except as provided in the applicable law." NMSA 1978, § 52–5–14(A) (1990). Thus, such agreements bind the parties even more strongly than would the common law contracts. *Cf. Medina v. Sunstate Realty, Inc.,* 119 N.M. 136, 139, 889 P.2d 171, 174 (1995) (" 'a written contract may be modified, rescinded or discharged by subsequent oral agreement.'" (quoting 4 Samuel Williston & Walter H.E. Jaeger, *A Treatise on the Law of Contracts,* § 591, at 203 (3d ed.1961))). Finally, where the agreement is written and executed, the writing "is presumptively conclusive proof of a binding agreement." *Rojo v. Loeper Landscaping, Inc.,* 107 N.M. 407, 409, 759 P.2d 194, 196 (1988); *see also Cruz v. Liberty Mut. Ins. Co.,* 119 N.M. 301, 304, 889 P.2d 1223, 1226 (1995). Worker and Employer are therefore bound by the plain terms of their written Section 52–5–12(C) agreement.

{7} This appeal turns on the meaning ascribed to a single phrase contained in the parties' written agreement: "Medical treatment to stay open for life with Dr. Peinert or his referral." Worker argued at the hearing below that inclusion of this language constituted a waiver of Employer's statutory right to designate a change in Worker's primary health care provider. *See* NMSA 1978, § 52–3–15(D) (1990). The WCJ rejected this argument and ruled that Employer was not liable for the payment of the cost of surgery Dr. Peinert performed upon Worker in July 1997. We disagree and reverse the order of the WCJ.

{8} In support of the WCJ's order, Employer argues that the settlement provision is ambiguous and this Court ought, therefore, to defer to the WCJ's factual findings pertaining to its meaning. *Cf. C.R. Anthony Co. v. Loretto Mall Partners,* 112 N.M. 504, 509, 817 P.2d 238, 243 (1991) (noting that ambiguity in contract is to be resolved by fact-finder). However, the threshold question of whether a contract is ambiguous is a question of law. *See id.; Mark V, Inc. v. Mellekas,* 114 N.M. 778, 781, 845 P.2d 1232, 1235 (1993). This Court, therefore, is not required to defer to the WCJ's conclusion that the contract provision is ambiguous. *See Fitzhugh v. New Mexico Dep't of Labor,* 1996–NMSC–044, ¶ 22, 122 N.M. 173, 922 P.2d 555. We find that the contested provision is not ambiguous; indeed, the parties drafted their contract with abundant clarity. *See, e.g., C.R. Anthony Co.,* 112 N.M. at 508 n. 2, 817 P.2d at 242 n. 2 ("Ambiguity ... is best understood as a proxy for describing lack of clarity in the parties' expressions of mutual assent.").

{9} The contested provision indicates a meeting of the minds regarding Worker's future medical care. It consists of two components: (1) it states that future "[m]edical treatment" will be provided "for life"; and (2) without any separating punctuation or expression of modified intent, it states that such benefits will remain open to Worker "with Dr. Peinert or his referral." Even considering the provision in context, *i.e.,* as part of the partial settlement of Worker's claims against Employer, we discern *no* ambiguity. *See C.R. Anthony Co.,* 112 N.M. at 508–09, 817 P.2d at 242–43 (recognizing judicial retreat from strict application of "four-corners" doctrine of contract interpretation).

{10} Furthermore, Employer makes no argument for any alternative meaning with which we could animate this contractual provision. Despite Employer's assertion to the contrary, we hold that the debated provision imposes upon it an obligation to provide Worker with future medical treatment "for life with Dr. Peinert or his referral." *Cf.*

*Vickers v. North Am. Land Devs., Inc.*, 94 N.M. 65, 68, 607 P.2d 603, 606 (1980) ("The mere fact that the parties are in disagreement on the construction to be given does not necessarily establish ambiguity.").

{11} Employer further argues that this provision is invalid as Worker paid no consideration for it. We do not agree. In consideration for the agreement, Worker released Employer from the obligation to issue biweekly payments for a period of time. This is obvious consideration. *See Hurley v. Hurley*, 94 N.M. 641, 645, 615 P.2d 256, 260 (1980), *overruled on other grounds by Ellsworth v. Ellsworth*, 97 N.M. 133, 135, 637 P.2d 564, 566 (1981); *cf. Acme Cigarette Servs., Inc. v. Gallegos*, 91 N.M. 577, 581, 577 P.2d 885, 889 (Ct.App.1978) ("[I]n a bilateral agreement, a promise of one party may support one or more promises of the other party."). Employer's argument, therefore, appears to be that Worker tendered *insufficient* consideration. However, absent a showing of fraud, "inadequacy of consideration is not sufficient to avoid a contract." *Ratzlaff*, 98 N.M. at 164, 646 P.2d at 591; *cf. Board of Educ. v. James Hamilton Constr. Co.*, 119 N.M. 415, 419, 891 P.2d 556, 560 (Ct.App.1994) (noting that a promise is sufficient consideration where it is "lawful, definite and possible" (quoting *Sanders v. Freeland*, 64 N.M. 149, 152, 325 P.2d 923, 925 (1958))). Employer's argument, therefore, has no merit.

{12} Employer finally argues that Worker waived his right to raise the foregoing argument when he failed to file an objection to Employer's notice of change of health care provider. In so arguing, Employer relies upon NMSA 1978, Section 52–1–49(C), (D), and (E) (1990), which provide that a party that did not choose the initial health care provider may by right file a notice of change of health care provider. If the other party objects to the notice of change, that party "shall" file an objection. *See id.* Worker filed no objection which would satisfy this requirement. Employer accordingly argues that Worker has waived any objection he may now have. We find that this argument has no merit.

{13} As we have already decided, by entering into the partial lump-sum agreement with Worker, Employer has waived its statutory right to order a change of Worker's health care provider. Employer cannot, therefore, now invoke the statute's procedural requirements regarding the exercise of this right. Had the parties designated Dr. Peinert as Worker's health care provider pursuant solely to Section 52–1–49, Employer's argument may have merit. However, bound as they are by the WCJ-approved agreement, the parties can now change its terms only by further contract or by application for modification in accordance with Section 52–5–9 (providing for modification of compensation orders). Under these circumstances, Worker was not obligated to object per Section 52–1–49.

{14} We hold today that Employer is bound to provide Worker's future medical treatment with Dr. Peinert or his referral as the treating physician. However, this provision of future care is limited to that care which is reasonable and medically necessary. *See* NMSA 1978, § 52–1–49(A) (1990); *Vargas v. City of Albuquerque*, 116 N.M. 664, 667, 866 P.2d 392, 395 (Ct.App.1993) (holding that reasonableness and necessity of health care services may be an issue regardless of who selects the health care provider); *cf. Gutierrez v. J & B Mobile Homes*, 1998–NMCA–007, ¶ 17, 126 N.M. 494, 971 P.2d 1284 (Ct.App.1998) (holding that workers' compensation statute vests WCJ with discretion to determine whether independent medical examination is reasonably necessary). In light of its resolution of the first two issues, the WCJ did not reach this issue. Accordingly, we remand this narrow question to the WCJ.

**CONCLUSION**

{15} For the reasons stated above, we hold that Employer waived its statutory right to order a change of Worker's primary health care provider. Accordingly, we reverse the WCJ's order to the contrary. However, we remand this matter for further proceedings to determine whether the back surgery Dr. Peinert performed on Worker was a reasonable medical necessity. In the

event that the WCJ determines the surgery was reasonably necessary, Worker is entitled to attorney's fees including fees incident to this appeal. *See* NMSA 1978, § 52–1–54(E) (1990); *Baca v. Highlands Univ.*, 113 N.M. 170, 171, 824 P.2d 310, 311 (1992); *see also Schiller v. Southwest Air Rangers, Inc.*, 87 N.M. 476, 478, 535 P.2d 1327, 1329 (1975) (holding attorney is entitled to fees for securing to worker compensation for incurred medical expenses).

{16}  **IT IS SO ORDERED.**

DONNELLY and PICKARD, JJ., concur.