2003-NMSC-013

70 P.3d 1260

**In the Matter of the ESTATE OF Georgia A. DUNCAN, deceased, Plaintiff–Respondent,**

v.

**Dean and Brenda KINSOLVING, Defendants–Petitioners.**

No. 27,516.

Supreme Court of New Mexico.

May 19, 2003.

Heidel, Samberson, Newell, Cox & McMahon, C. Gene Samberson, Lewis C. Cox, III, Lovington, NM, for Petitioners.

Parker Law Office, P.C., Alvin Joe Parker, Clovis, NM, for Respondent.

## OPINION

MINZNER, Justice.

{1} Petitioners Dean and Brenda Kinsolving appeal from an opinion of the Court of Appeals affirming a district court order declaring the termination of their interest as lessees of real property following the death of their lessor. *See In re Estate of Duncan,* 2002–NMCA–069, 132 N.M. 426, 50 P.3d 175. The district court and Court of Appeals held that Petitioners' lease terminated at the death of the lessor, Georgia A. Duncan ("Decedent"), because she held a life estate in the property. Because Decedent held during her lifetime interests other than a life estate, which interests were transferable, we hold that Petitioners' interest as lessees was not terminated. We hold that the only portion of the lease which expired on Decedent's death was that portion she conveyed as a life tenant. Because she had a fee simple interest which extended to the property as a whole, the lease remains in full force and effect as to that interest. Accordingly, we reverse and remand for further proceedings.

## I

{2} The Court of Appeals opinion sets forth the facts of this case in detail. *See id.* ¶¶ 3–12. Accordingly, we only need to summarize those facts crucial to our analysis, which are not in dispute. The crucial facts are those that affect the present interests in the real property subject to the district court's order. Those interests are complex.

{3} In 1995, Decedent executed a ten year lease of a ranch and a residence to Petitioners. The ranch was to be utilized by Petitioners for cattle grazing purposes. The lease contained a provision recognizing that a portion of the property was subject to a life estate; it also provided for a refund of rent in the event that all or part of the lease was invalidated. Decedent died in 1997, fifteen months after entering into the lease.

{4} The property subject to the district court's order included the ranch, which consisted of 5680 acres, and a separate residence in Ruidoso. Decedent owned the residence in Ruidoso and a 320–acre parcel of the ranch in fee simple. Decedent had acquired the residence in Ruidoso, following the death of her husband in 1968, as the surviving joint tenant. The 320–acre parcel was her separate property. Pursuant to a family settlement agreement entered into in 1969, she held an undivided fractional interest in the remaining portion of the ranch as a life estate, to which her children succeeded upon her death; the agreement concerned the portion of the ranch that became part of her husband's estate as his share of the community property. She also possessed an undivided fractional interest in fee simple; she had acquired that interest upon her husband's death as her share of the community property. Following the settlement agreement, one of her sons predeceased her, dying intestate without a surviving spouse or children.

{5} At the time of her death, as a consequence of interests acquired upon her husband's death and interests acquired as a result of the family settlement agreement and her son's subsequent death, her estate included an undivided 7/12 interest in 5360 acres of the ranch. Her estate also included the residence in Ruidoso and the 320–acre parcel of the ranch. Her surviving children and the heirs of another son, who predeceased her by a few days, owned the remaining 5/12 interest in 5360 acres of the ranch.

{6} Following Decedent's death, the personal representative of Decedent's estate filed a motion for declaratory relief with the district court, asking it to determine whether the lease was enforceable. In 1999, the district court entered its Findings of Fact and Conclusions of Law, holding that the lease terminated at the time of Decedent's death.

The district court also concluded that the entire ranch and the Ruidoso residence were subject to the life estate as well.

{7} Petitioners appealed, asserting among other arguments that the district court lacked subject matter jurisdiction because informal probate proceedings were never converted into formal probate proceedings, and asserting that the district court erred in invalidating the lease. The Court of Appeals upheld subject matter jurisdiction in favor of the district court, and generally affirmed the district court's ruling concerning the lease. The Court of Appeals, however, modified the district court's order. The Court of Appeals held that the district court had erred in determining that the entire ranch and the Ruidoso residence were subject to the 1969 settlement agreement and that Decedent's interests in the 320–acre parcel and the residence were limited to a period measured by her life. The Court of Appeals held that the evidence produced did not support a determination that her interests in the 320–acre parcel or the residence were extinguished by her death. *See Duncan*, 2002–NMCA–069, ¶ 26, 132 N.M. 426, 50 P.3d 175. The Court of Appeals applied the doctrines of frustration of purpose and impracticability to strike the lease in its entirety.

{8} In their petition to this Court, Petitioners only assert that the lease issue was wrongly decided; that is, they argue the lease did not terminate upon Decedent's death. We therefore do not consider the Court of Appeals' subject matter jurisdiction determination. Further, we review the district court's order as modified by the Court of Appeals. We consider the effect of the lease on the ranch and the residence, keeping in mind that Decedent owned the 320–acre parcel and the residence in fee. For the reasons that follow, we hold that the lease did not terminate upon Decedent's death. We do not consider the Court of Appeals' application of the doctrines of frustration of purpose and impracticability.

## II

{9} In this case of first impression we are called upon to decide whether a lease executed by a person who has an undivided fractional fee simple interest in land, and an undivided fractional life estate in the same land, will continue to be enforceable after the death of the lessor. This is a question of law, which we review de novo. *Hasse Contracting Co. v. KBK Fin., Inc.*, 1999 NMSC 023, ¶ 9, 127 N.M. 316, 980 P.2d 641 ("Appellate courts review matters of law *de novo.*"). Petitioners have argued that the rulings of the district court and the Court of Appeals conflict both with this state's strong public policy upholding the freedom of contract as well as rules of property law. Respondent[1] contends that the holdings we must review properly reflect the force of the general principle that one cannot convey more than one owns and the more specific application of that principle in the context of a lease of real property by one whose interest is measured by his or her life or the life of another. On the unique facts of this case, we conclude that Petitioners have the stronger argument, because Decedent owned interests at the time of the lease other than the life estate she acquired as a result of the 1969 family settlement agreement. Those interests were transferable. *See generally Statler v. Watson*, 160 Neb. 1, 68 N.W.2d 604, 607 (1955) (recognizing a life tenant's power to lease not only her present interest in the land she occupies but also a future interest she owns in the same land).

{10} In this state, we have a broadly worded statutory scheme governing the transfer of interests in real property. *See* NMSA 1978, § 47–1–4 (1851–1852) ("Any person . . . holding, or who may hold, any right or title to real estate in this state, be it absolute or limited, in possession, remainder or reversion, may convey the same in the manner and subject to the restrictions prescribed in this chapter."). We consider the 1969 settlement agreement, the 1995 lease, and the passage of interests as the result of Decedent's death

---

1. Contrary to the designation of the parties for purposes of this appeal, reflected by the caption of this opinion, the estate of Georgia A. Duncan is not in fact the respondent in this proceeding; one of the remaindermen to her life tenancy, her son Wraldo Presley Duncan, has represented the Respondent's position in this Court.

in light of that statute as well as Decedent's interests arising upon her husband's death in 1968. We conclude that accepting Respondent's argument would result in diminishing the property interest Decedent acquired upon her husband's death, in her own right, as her share of the community property.

{11} In general, those who hold life estates in property may lease their interests to others freely. *See* 2 Richard R. Powell, *Powell on Real Property* § 15.03[3], at 15–46 (Michael Allan Wolf ed., rel. 92, 2000). There is but one critical limitation on this power. While those who hold property in fee may enter into leases that extend beyond their death, *see* 51C C.J.S. *Landlord & Tenant* § 92 (1968); *see also Padilla v. Sais*, 76 N.M. 247, 251, 414 P.2d 223, 226 (1966) (applying this rule without explicitly stating it), leases entered into by life tenants will terminate upon the life tenant's death, absent ratification by the remaindermen.[2] *Nevarez v. State Armory Bd.*, 84 N.M. 262, 266–67, 502 P.2d 287, 291–92 (1972). The limitation reflects the nature of a life estate and the general principle that one cannot convey more than one owns.

{12} The Court of Appeals recognized the limitation and concluded that as to the portion of the property affected by the life estate, which the court described as 5360 acres, the lease was unenforceable. The court reasoned that, although Decedent had a fee simple interest in 7/12 of the 5360 acres, the fact that she held a life estate in the remaining 5/12 triggered the limitation. This left a lease of 320 acres plus the residence in Ruidoso. The court concluded that on these facts the underlying purpose of the lease was "frustrated to the point where the lease is voided by operation of law." *Duncan*, 2002–NMCA–069, ¶ 27, 132 N.M. 426, 50 P.3d 175.

{13} Petitioners argue that the Court of Appeals erred in describing Decedent as owning 7/12 of the 5360 acres in fee simple, while also describing the entire property as subject to Decedent's life estate. We recognize the apparent inconsistency of these descriptions, but the Court of Appeals' conclusion derives from the undisputed facts. Decedent did not own a separate parcel, equal to 7/12 of the property, in fee simple, and hold a life estate in the remaining 5/12 of the property. Rather, as a result of her husband's death and the family settlement agreement, she enjoyed an interest for her life in the entire 5360 acres, but she also was entitled to a greater interest in a portion of the same property.

{14} The Court of Appeals' conclusion that the lease ended, however, failed to account for the interests Decedent had held in her own right. *See Duncan*, 2002–NMCA–069, ¶ 26, 132 N.M. 426, 50 P.3d 175 ("[T]he vast majority (5360 acres) of the properties at issue in this case were subject to a life estate and therefore vested with the remaindermen upon Decedent's death. This leaves us with the Ruidoso property and the 320–acre parcel of the Tatum Ranch that were held as separate property by Decedent."). The legal consequences of the agreement, which had expanded Decedent's rights during her lifetime and which controlled the devolution of an undivided fractional interest in the ranch, differ from the legal consequences of her death for the devolution of the other undivided fractional interest in the ranch. As the Court of Appeals reasoned concerning the 320–acre parcel and the Ruidoso residence, there is insufficient evidence to support a determination that "the 1969 settlement agreement giving Decedent a life estate in Robert Wraldo Duncan's community property" extinguished other interests Decedent held following her husband's death. *Id.* Decedent was entitled during her lifetime to transfer the present right of exclusive possession she then held. She also was entitled to transfer the future interest to which her estate otherwise was entitled.

{15} The record indicates that following her husband's death, Decedent became a co-tenant with her children of the portion of the ranch that had been community property. *See* NMSA 1953, § 29–1–9 (repealed 1973)

---

**2.** In this case, one of the sons who survived Decedent and those representing another son who predeceased her by a few days have ratified the lease. Those representing the other remainder interests, which in the aggregate represent a 3/12 (or 1/4) interest in the 5360 acre portion, have not ratified the lease.

(describing the devolution of community property upon the death of the husband survived by his wife). As co-tenants, they were entitled to joint possession of the entire 5360 acres that had been community property; no one co-tenant had the right to exclude the other. *See Statler*, 68 N.W.2d at 606 (describing a tenancy in common as "characterized by the essential unity of possession or right of possession"). Following the agreement, however, Decedent had the exclusive right of possession during her lifetime. Her children had, through the agreement, relinquished their right to joint possession as co-tenants during their mother's lifetime. Nevertheless, Decedent retained her right to convey during her life or upon her death the share of the community property she had acquired as the surviving spouse. She had two distinct present interests during her life, one as a result of the agreement and the other in her own right as the surviving spouse. During her lifetime, the existence of distinct interests was unremarkable. Upon her death, however, a question arose to which the existence of distinct interests was relevant.

{16} That question was how her death affected any interest in the 5360 acres not limited by her life. The Court of Appeals concluded that the termination of the interest she acquired pursuant to the agreement required the termination of the lease. We reach a different conclusion. Upon the death of Decedent, the interest which she had acquired as a result of the agreement ended, and an undivided 5/12 interest in 5360 acres vested in her children and their heirs. The undivided 7/12 interest which she had acquired in her own right, became the property of her estate, subject to any interests she had transferred during her lifetime. As a result, her estate became a tenant in common with the remaindermen. Each co-tenant has an undivided right to use the property as a whole.

{17} The uniqueness of this situation, where one party holds an undivided interest in property as a life tenant, and holds an undivided interest in the same property as an owner in fee, is demonstrated by the paucity of case law on the subject. *Statler*, however,

supports Petitioners' position. In that case, the Supreme Court of Nebraska considered whether a lease entered into by a person who had a 1/4 ownership interest and a 3/4 life tenancy interest in a parcel was valid after that person's death. The court held that "[i]t is true that the death of a life tenant during the term terminates a lease existing between him [or her] and his [or her] lessee *if the lease is confined to the life tenancy.*" *Id.* at 607 (emphasis added). The lease at issue was not confined to the life tenancy, but covered that interest as well as the lessor's fee interest. As a result, the lease made "by deceased [was] valid and existing as to the undivided one-fourth of the land owned by her." *Id.*

{18} We agree with the reasoning of *Statler* because it is consistent with our precedent regarding leases entered into by some, but not all, of the co-tenants. In *Williams v. Sinclair Refining Co.*, 39 N.M. 388, 390, 47 P.2d 910, 911 (1935), this Court held that a lease of real property by one co-tenant would be valid as between the lessor and lessee, despite the fact that another co-tenant did not consent to the lease. The lease operated to give the lessee the same rights as the lessor co-tenant, so it "became entitled to the reasonable use, benefit, and possession of the common property along with [the non-consenting co-tenant]." *Id.* at 391, 47 P.2d at 911. The same conclusion should follow here. Extending the rule of *Williams* to this case means that Decedent's interest in the property that became part of her estate upon her death was fully transferrable by lease without the consent of those who became co-tenants as a result of the expiration of Decedent's life estate. Of course, the children's consent was not required when the lease in this case was entered into, because the children had no right of possession at all after they entered into the settlement agreement, but before Decedent's death. We therefore do not place any significance on the fact that this lease was entered into prior to the time that the children's interest in the property vested.

{19} We have held that "under certain circumstances a conveyance which purports to grant complete ownership of a spe-

cific tract within the common estate may operate to transfer only the vendor's undivided interest in that portion of the estate." *Landskroner v. McClure,* 107 N.M. 773, 776, 765 P.2d 189, 192 (1988). This is consistent with the rule that " '[t]he conveyance of a certain tract of land by the life tenant conveys to the grantee such estate as the life tenant holds....' " *Statler,* 68 N.W.2d at 607. (quoting *Moffitt v. Reed,* 124 Neb. 410, 246 N.W. 853, 853 (1933)). As in *Statler,* this case does not involve a defective deed of complete ownership, but it does involve a lease which purported to convey an exclusive right to the property. The lease may not operate to exclude the non-consenting co-tenants, but it does operate to give Petitioners rights that Decedent's estate otherwise would possess, in the absence of the lease.

### III

{20} Respondent also claims that the lease is unenforceable as to the residence located in Ruidoso, for lack of consideration. Respondent points to the lease agreement itself, which describes all of the property subject to the lease, except the Ruidoso property, then states the amount of rent "for the above described leased premises" in the second paragraph of the lease. A separate clause found in paragraph 11, toward the end of the agreement, states that "LESSOR grants to LESSEE the exclusive use of LESSORS [sic] residential property located at 126 Ebarb, Ruidoso, New Mexico, subject only to use by LESSOR whenever she so desires." The lease does not provide for any additional consideration for the use of this property.

{21} We do not find Respondent's argument persuasive. Taken to its logical conclusion, this reasoning would operate to make any clause of the contract placing a burden on the lessor unenforceable which is not specifically mentioned in the rent clause. In general, however, "if the performances or promises on one side fulfill the legal requirements of consideration, they will support any number of counterpromises on the other. A common illustration of this principle is found in a sale with a warranty. The consideration for the promise to warrant is the making of the sale for the agreed price." 3 Richard A. Lord, *Williston on Contracts* § 7:49 (4th ed.1992) (footnote omitted); *accord* 17A Am. Jur.2d *Contracts* § 134 (1991) ("The single consideration of paying a specified sum of money by one party to a contract is sufficient to support several distinct stipulations by the other party to do, or refrain from doing, certain things, and it is unnecessary to repeat in every paragraph of the contract that such stipulations are entered into for the consideration once expressed."). We cannot know whether the provision of this lease which includes use of the Ruidoso property was bargained for in exchange for some other specific lease provision, or if it was simply a method Decedent used to persuade Petitioners to enter the contract. Either way, the consideration existed. We need not explore its sufficiency. "[A]bsent a showing of fraud, 'inadequacy of consideration is not sufficient to avoid a contract.' " *Ramirez v. Johnny's Roofing, Inc.,* 1999–NMCA–038, ¶ 11, 127 N.M. 83, 977 P.2d 348 (quoting *Ratzlaff v. Seven Bar Flying Serv., Inc.,* 98 N.M. 159, 164, 646 P.2d 586, 591 (Ct.App. 1982)).

### IV

{22} Because we hold that the lease continues to be valid as to the entire property, but it is no longer exclusive as to the 5360 acres in which the remaindermen have an interest, we believe the application of the doctrines of impracticability and frustration of purpose by the Court of Appeals is not at issue. The terms of the lease demonstrate that the parties to the lease anticipated that it may be limited by the expiration of the life estate. Petitioners have a right to use the property in its entirety, subject to the limitation that they may not exclude those co-tenants who have not ratified the lease agreement.

{23} We recognize that those who now hold the possessory interests in the ranch may not be able to agree on the uses to which it ought to be put. We note that the term of the lease has less than three years to run and that the Legislature has provided by statute that a co-tenant may petition "for a division and partition and for a sale thereof,

if it shall appear that partition cannot be made without great prejudice to the owners," NMSA 1978, § 42–5–1 (1907), and that we have held the statute does not preclude a district court from exercising, in its discretion, equitable powers, *see Sims v. Sims,* 1996–NMSC–078, ¶ 51, 122 N.M. 618, 930 P.2d 153.

## V

{24} For the foregoing reasons, we reverse the Court of Appeals' determination that the district court correctly ruled the lease had terminated. We are persuaded that Decedent had interests in the property subject to the district court's order that survived her death. Those interests include the 320–acre parcel, the Ruidoso residence, and an undivided 7/12 interest in 5360 acres of the ranch. We are persuaded as well that she had transferred her interests to Petitioners for ten years. We remand for further proceedings consistent with this opinion.

{25} **IT IS SO ORDERED.**

WE CONCUR: PETRA JIMENEZ MAES, Chief Justice, PATRICIO M. SERNA and RICHARD C. BOSSON, Justices.